DONALD L. GOERS, APPELLEE, V.
BUD IRONS EXCAVATING, APPELLANT.

300 N.W.2d 29

Filed December 29, 1980.   No. 43103.

Baylor, Evnen, Curtiss, Grimit & Witt for appellant.

Hal Bauer of Bauer, Galter, Geier, Flowers & Thompson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant employer, Bud Irons Excavating (Irons), appeals from an award made to its employee, Donald L. Goers (Goers), by a three-judge panel of the Workmen's Compensation Court on rehearing.

A brief summary of the background of the case will aid in understanding the issues made by the errors assigned on appeal. In 1973, Goers was employed as a firefighter by the city of Lincoln fire department. He also held a second job as a truckdriver, equipment operator, and laborer for Irons. On January 15, 1973, while working for Irons, he was injured when a large piece of frozen dirt and ice fell from a load, striking his right shoulder, hip, and ankle. He suffered an ankle fracture. He also received severe bruises on the right hip. The ankle healed satisfactorily. During September 1973, the pain in Goers' hip area increased. A bone cyst in the femur of his right leg was diagnosed. Surgery was performed and an aneurysmal bone cyst excised. The excised area of the femur was packed with bone chips taken from the iliac crest. In November 1973, Goers returned to work as a firefighter and resumed his part-time employment with Irons. The workmen's compensation carrier for Irons paid medical expenses, hospital bills, and, also, temporary total disability while Goers was off work because of his ankle injury and bone surgery.

In 1978, the cyst again developed. A larger cyst, at the same site as the earlier one, was removed and the bone repaired using the techniques employed in 1973.

In 1979, Goers filed a petition in the Workmen's Compensation Court. The award from which this appeal was taken resulted.

The Workmen's Compensation Court made the following findings and award: "There are two main questions: First, whether the increased disability and additional hospital and medical expense occurring in 1978 and 1979 are compensable; and second, whether the disability is to the leg or to the body as a whole. On conflicting medical testimony, we find that plaintiff has proved by a preponderance of the evidence that a causal relationship exists between the accident of January 15, 1973, and the subsequent deterioration of plaintiff's initial injury which occurred five years later in 1978. We further find that plaintiff's injury is limited to the leg and does not involve the hip joint as such. Consequently, it is compensable as a partial loss of a member and not as a disability to the body as a whole."

The court made a specific finding on the temporary total disability payments to which Goers was entitled because of time lost in 1973; found that he suffered a 25 percent permanent partial loss of use of the right leg in 1974, and, in 1978, a further 25 percent permanent partial loss of use of that leg; and determined the amounts payable on account of said losses, and allowed credit to the employer for compensation already paid in the sum of $4,301.51. It entered an appropriate order for payment. It further ordered payment of hospital and medical expenses in the sum of $6,587.56, and awarded attorney fees for the rehearing in the sum of $500.

The assignments of error made by Irons on this appeal raise the following issues: (1) Whether the recurrence of the cyst in 1978 was causally related to the 1973 injury; (2) whether the surgeon's testimony, that the 1978 recurrence was caused by the 1973 injury, should have been excluded because the opinion lacked foundation and his testimony supporting the same was contradictory; (3) if the 1978 recurrence was causally connected to the 1973 injury, did the evidence support the Workmen's Compensation Court's

finding that the injury was to a member, compensable under Neb. Rev. Stat. § 48-121(3) (Reissue 1978), rather than to the body as a whole, compensable under § 48-121(2), in which case the benefits paid for partial disability must be reduced by the number of weeks for which temporary total disability was paid; and (4) whether the Workmen's Compensation Court erred in making an allowance for attorney fees on rehearing because the employer did obtain a reduction in the amount of medical and hospital expenses allowed.

We sustain the findings of the Workmen's Compensation Court except on the award of attorney fees on rehearing.

Our review of these findings is governed by Neb. Rev. Stat. § 48-185 (Reissue 1978) which provides, in part: "The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award." Findings of fact made by the Workmen's Compensation Court after rehearing will not be set aside unless clearly wrong. In testing the sufficiency of evidence to support factual findings made by the Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor, and he should have the benefit of every inference that can be reasonably drawn therefrom. *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980).

Issues (1) and (2) are interdependent and will be discussed together. The expert testimony indicates that

the cause of aneurysmal bone cysts is unknown. It further shows that a high percentage of the population have such cysts and, in most cases, they cause no problems, i.e., they are asymptomatic. However, the cysts can begin to grow spontaneously, or growth may result from trauma, causing microfractures and hemorrhaging. Such growth produces pain and destroys normal bone cell structure. Treatment in cases like Goers' is surgical by curetting the tumor and replacing the destroyed bone with chips, all as previously described in this opinion.

The treating surgeon testified that Goers' cyst existed before the 1973 accident; in his opinion, that injury damaged the cyst and caused it to activate and begin growing. This causal connection was evidenced by his findings during surgery which disclosed recent local hemorrhaging and blood clots within the cyst. He further gave his opinion that the 1978 recurrence was causally related to the 1973 injury, saying it was directly connected to the early injury and that, except for the 1973 trauma, the cyst would have remained dormant. He based this opinion, about the causal relationship between the 1973 trauma and the 1978 recurrence, upon his past knowledge and experience. The treating surgeon also testified that it was not possible to tell with certainty that the 1973 surgery excised all the abnormal cells.

In a deposition offered by Irons, another physician, certified in internal medicine, testified that the 1973 trauma neither caused nor aggravated the recurrence of the bone cyst. He founded his opinion upon the fact that the surgeon's record indicated that Goers was symptom free for an approximate 2-year period between 1973 and 1978, and the further fact that even slight trauma such as walking, lifting, or weight-bearing, can cause microfractures and hemorrhaging which result in reactivation.

Irons contends that the surgeon's opinion lacked sufficient foundation. This argument is based upon

the surgeon's testimony that the cause of aneurysmal cysts is unknown; that they may activate spontaneously; and the fact that the doctor, before giving his testimony, stated in a report to Goers' counsel: "Then it became apparent that his right hip was reactivated, how, why and the like after apparently being regressed is anyones guess. We don't know enough about this matter except from previous experience."

Examining the surgeon's testimony in toto and taking into consideration the alleged inconsistent statement, as well as the lack of precise scientific knowledge about the mechanism of cyst activation, it seems to be substantially as follows: Based upon his past clinical experience, it is his opinion, founded upon his observations and treatment of the patient in this case, that, except for the 1973 injury, the cyst would have remained dormant and the 1978 recurrence would not have happened. It is to be noted that the impeaching statement about "anyones guess" was qualified by the one which followed: "We don't know enough about this matter *except from previous experience.*" (Emphasis supplied.)

The legal principle governing this issue is that if a witness makes extrajudicial statements of fact concerning matters material to issues in a controversy, such statements are available for impeachment. However, impeaching statements are not conclusive. They may be explained, rebutted, or contradicted, and thereafter are to be given such weight as the trier of fact deems them entitled. *Ferlise v. Raznick*, 202 Neb. 745, 277 N.W.2d 94 (1979); *State v. Price*, 202 Neb. 308, 275 N.W.2d 82 (1979); *Wilson v. State*, 170 Neb. 494, 103 N.W.2d 258 (1960), *cert. denied* 364 U.S. 887, 81 S. Ct. 178, 5 L. Ed. 2d 108 (1960). The trier of fact was entitled to consider the surgeon's opinion on the causation issue and thus its finding on causation is supported by the evidence.

We now turn to the question of whether the evidence supports the Workmen's Compensation Court's

finding that the injury was to a member rather than to the body as a whole. The standard governing review in this court, we have previously mentioned. The other applicable legal principles are: "An employee suffering a schedule injury falling under subdivision (3) of section 48-121, R. R. S. 1943, is entitled only to the compensation provided for in that subdivision, unless some unusual or extraordinary condition as to the other members or other parts of the body has developed; and the presence or absence of industrial disability is immaterial.

"Whether an injury results in an unusual or extraordinary condition affecting other parts of the body ordinarily presents a question of fact. . . .

"Under either subdivision (1) or (2) of section 48-121, R. R. S. 1943, a determination must be made as to the employee's loss of employability or earning capacity, and loss of bodily function is not an issue." *Scamperino v. Federal Envelope Co., supra* (syllabus of the court). We can overturn the factfindings of the Workmen's Compensation Court under the circumstances of this case only if a finding is not supported by sufficient competent evidence.

The evidence in this case shows without contradiction that the cyst involved only the femur. The femur is a part of the leg as defined by this court in *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977). The surgeon's testimony was that "the mass [cyst] was the size of a lemon and involved the whole neck and up into the head part of the ball part of the femur and this was a much more extensive lesion or tumor than even the original one, and as a matter of fact had actually fractured through the neck segment of the . . . femur." The cyst removed in 1978 was located at exactly the same site as the 1973 cyst. There was no evidence that the socket of the innominate bone was affected as in *Jeffers*.

The surgeon also testified that Goers may experience future difficulties and require further surgical treat-

ment because the possibility of a fracture of the femur still exists.

As to disability, the surgeon testified: "[H]e has at least 50 percent disability of the right hip; *in effect the whole extremity.*" (Emphasis supplied.) He also rendered this opinion: If disability is based on "employability," Goers was disabled 50 percent of the body as a whole because he is not able to climb or walk distances, he must maintain crutch support, and his mobility will be affected by weather conditions. At another point, the surgeon testified that the injury resulted in limitations on Goers' ability to jump and lift weights because of the danger of fracture. He also mentioned limitation of motion at Goers' hip joint. Part of the surgeon's opinion concerning disability was based on the presence of arthralgia and myalgia. Both are nonspecific terms referring respectively to joint discomfort and muscular pain. They were not further defined.

The expert witness called by the defendant, taking into consideration the factors above described, testified that the plaintiff suffered a 20 percent disability of the leg.

There was no expert testimony that the cyst and surgery caused some "unusual or extraordinary" condition in other members of the body to develop. It is noted that the limitations on Goers' ability to climb, walk distances, maintain crutch support, jump, and lift weights, as well as the effect of weather conditions mentioned by the surgeon, could have occurred even if the cyst had been lower in the femur, or even in the lower part of the leg.

Under the foregoing state of the evidence, the trier of fact was entitled to conclude that the disability was one of the lower right extremity and that there was no "unusual or extraordinary" condition in another member of the body. In sum, the evidence was not of such a nature that it compelled a finding otherwise.

The third issue relates to the allowance of attorney fees for the rehearing. Neb. Rev. Stat. § 48-125 (Reissue 1978) provides, in part: "In the event the employer files an application for a rehearing before the compensation court en banc from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court sitting en banc may allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, . . . ." The record establishes that on rehearing the Workmen's Compensation Court reduced the amount of allowable hospital and medical expenses from $6,616.32 to $6,587.56. This reduction appears to have been the cumulative effect of correcting various errors in the allowance by the single judge. Since Irons obtained a reduction on appeal, no attorney fee should have been allowed on rehearing.

Irons, on appeal to this court, has failed to obtain a further reduction in the allowances made by the three-judge panel. Goers, therefore, is entitled to an allowance for services of his attorney in this court. Section 48-125 provides: "[T]he Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court." Goers is awarded a fee of $1,250 for the services of his attorney in this court.

AFFIRMED AS MODIFIED.

HASTINGS, J., concurs in result.

KRIVOSHA, C.J., concurring, in part, and, in part, dissenting.

I concur generally with the majority in this case. I dissent, however, from that portion of the majority opinion which found that the attorney fee taxed as costs against the employer on rehearing should not have been allowed because the employer obtained a reduction in the amount of allowable hospital and medical expenses from $6,616.32 to $6,587.56. Neb.

Rev. Stat. § 48-125 (Reissue 1978) provides, as noted by the majority, as follows: "In the event the employer files an application for a rehearing before the compensation court en banc from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court sitting en banc may allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, . . ." It would be my view, in light of the purposes of the workmen's compensation act, that unless the evidence discloses that the employer obtains a reduction by reason of something more than a mathematical error, an attorney fee may properly be allowed. The evidence in this case discloses that the reduction obtained was simply the result of correcting certain mathematical errors which were allowed by the single judge. The reduction did not come about by reason of any new findings of fact or errors of law. I believe that where the reduction is simply the correcting of a mathematical error, the Workmen's Compensation Court is authorized to allow an attorney fee, as it did in this case, and we are in error in now disallowing it.