SOLO CUP COMPANY, a corporation, Petitioner,

v.

Roy BROWN, and the Workers' Compensation Court, Respondents.

No. 57468.

Court of Appeals of Oklahoma, Division No. 2.

May 18, 1982.

Rehearing Denied May 28, 1982.

Released for Publication by Order of the Court of Appeals March 11, 1983.

---

K. David Roberts, King, Roberts & Beeler, Oklahoma City, for respondents.

Henry F. Featherly, Lamun, Mock, Featherly, Baer & Timberlake, Oklahoma City, for petitioner.

BRIGHTMIRE, Judge.

Two questions are presented in this worker's compensation case: (1) is the trial court order requiring the employer to pay for the injured employee's vocational rehabilitation appropriate under the provisions of 85 O.S. 1981 § 16; and (2) if it is, should the court have ordered the employer to pay claimant's attorney's fees and deposition expenses incurred in achieving the rehabilitation order? We answer both affirmatively.

## I

Nineteen-year-old Roy Brown was on his first job after graduating from high school. On July 7, 1979, an overloaded forklift he was operating fell on him fracturing his right leg, pelvis and sacrum and causing sundry other injuries including some to his urinary tract and right eyelid. On August 5, 1980, after extensive medical treatment, young Brown was awarded 50 percent permanent partial disability to the right leg and 15 percent to the whole body as a result of the pelvis and low back injury. An award for the urinary tract problem was reserved for a later hearing as was Brown's application for vocational rehabilitation.

The latter matter was heard July 27, 1981, and resulted in an order requiring the employer, Solo Cup Company, to pay the costs of Brown attending Paris Junior College, Paris, Texas, for rehabilitational schooling. At the same time, the court denied claimant's request to assess attorney's fees and expenses connected with the rehabilitation hearing against Solo.

These orders were affirmed by the court en banc and both parties appeal to this court. Solo contends the rehabilitation order is improper under the law and evidence. The worker complains about the denial of his application for attorney's fees and expenses incident to the rehabilitation hearing.

We affirm the order insofar as it requires Solo to send Brown to school and reverse that part which denies attorney's fees and expenses incurred in prosecuting the contested request for rehabilitative relief.

## II

■ Solo's contention is that the claimant's evidence does not meet the statutorily prescribed eligibility criteria for vocational rehabilitation benefits under the Workers' Compensation Act. This conclusion is founded on the fact that the statute—85 O.S.1981 § 16—specifies that an "employee who has suffered [a covered accident or disease] shall be entitled to prompt and reasonable physical and vocational rehabili-

tation and job placement so as *to restore him to gainful employment.*" [1]

The emphasized language forms the core of Solo's argument. It obviously means, says the employer, that vocational training can be ordered only for "injure[d] workmen who cannot otherwise find gainful employment ... [and] not to provide scholarships to train workers so that they can qualify for better paying jobs."

Solo admits Brown is not able to perform unrestricted heavy labor, but argues he is able to be gainfully employed in light assembly or similar work, or as a grocery store cashier. "The [c]laimant," says Solo, "has not sought any type of employment for wages, being content to sit around and wait for Solo Cup to send him to school."

The record does not, we think, justify this appraisal of the claimant's ability or motives. As we mentioned earlier, claimant's early request for vocational training was not decided on August 5, 1980, but passed and placed on a January 1981 docket for disposition. It was not heard then, however, because Solo said it wanted to have International Rehabilitation Associates, Inc., test and analyze Brown. Claimant agreed to submit to an IRA evaluation and Solo's request was granted.

After an investigation, an IRA specialist issued a written report which Brown placed in evidence at a hearing held June 29, 1981. The report recited that to "implement a Rehabilitation Plan," Brown should take a 30 month course in watchmaking, jewelry technology, and gemology at Paris Junior College at Paris, Texas.

Other evidence was heard June 29 relating primarily to what Brown could and could not do. At the end of the hearing, the trial judge decided that the claimant needed to supplement the IRA report with medical proof to the effect that claimant could no longer perform the same kind of work he was doing at the time he was injured and that he would be able to perform the type work recommended by IRA. Moreover, the trial court thought the em-

ployer needed additional time to prepare an evidentiary counterattack if it wished to do so. So, the case was continued for another month.

While it is not in the record, Brown says he submitted a deposition of a physician indicating that claimant was a good candidate for the proposed rehabilitation training. Solo also placed in evidence another physician's report which tended to support the views of claimant's physician in that he stated he saw no reason why Brown should not start "the rehabilitation school for jewelers [at] the Paris Junior College."

Consequently, on July 28, 1981, the trial judge entered an order finding that claimant was a good candidate for vocational rehabilitation as recommended in the IRA report and ordered the employer to bear the cost of the training as soon as the worker could enroll in the Paris Junior College.

The evidence is quite sufficient to support this order. It was not necessary, as Solo contends, for the court to find claimant could not carry on any type of gainful employment whatsoever as a prerequisite to ordering the employer to finance the recommended vocational training. Apparently Solo wants us to commit ourselves to an extremely narrow and unrealistic construction of § 16, namely, that if a crippled worker can sell apples or pencils in the town square or perform some type of boring routine task on, say, an assembly line, he is not entitled to vocational rehabilitation regardless of his pre-injury or postinjury interests, aptitudes or abilities. This perception of the statute places exclusive emphasis on the words "gainful employment" and ignores the import of another significant word used by the legislature, namely, "restore." And therein lies the fallacy of Solo's position.

In context of the statutory language the term "restore," by dictionary definition as well as common usage, means "to put (a person) back in a former position, place,

---

1. (emphasis added)

rank, or condition ...." [2] Of course, a worker's injuries may be such that he cannot be completely restored to the entire range of his former employment potential and earning capacity. In a situation of that nature the law contemplates rehabilitative restoration as nearly as possible to the worker's pre-injury status taking into consideration the type of work the worker was doing at the time of the injury, his income level and earning capacity, his vocational aptitude, his mental as well as physical abilities and other relevant circumstances.

The trial judge, proceeding in this case without any definitive decisional guidelines, handled the matter very well. Brown was dealt with as a person and not just as an expendable hunk of human flesh in the work force. The strongest evidence was the IRA report. It was based in part on an evaluation of Brown made by the Ada Evaluation Center, Ada, Oklahoma, following a series of vocational oriented tests. They disclosed that Brown was enthusiastic about jewelry making, did "exceptionally well" on a work sample, and had the ability and aptitude for the proposed vocation—a vocation that "capitalizes on his strengths and makes minimal demands on areas he is weak in."

The approach taken by the trial judge seems to find additional statutory imprimatur in the following provisions of § 16:

"If rehabilitation services are not voluntarily offered by the employer and accepted by the employee, the Judge of the Court may on his own motion, or if requested by a party shall, after affording all parties an opportunity to be heard, refer the employee to a qualified physician or facility for evaluation of the practicability of, need for and kind of rehabilitation services or training necessary and appropriate in order to restore the employee to gainful employment. *Upon receipt of such report,* and after affording all parties an opportunity to be heard, *the Court shall order that any rehabilitation services or training, recommended in the*

*report,* or such other rehabilitation services or training he may deem necessary, provided the employee elects to receive such services, *shall be provided at the expense of the employer....*" (emphasis added)

As we have seen, the trial court's order was based not only on claimant's evidence, but on reports submitted by Solo as well.

We, therefore, hold that the order is correct both as to the law and the evidence.

### III

In his cross-appeal claimant complains about the fact that the court denied his application to assess as costs, payable by Solo, attorney's fees incurred in achieving the rehabilitation order and the expenses connected with the deposition taken to obtain the medical evidence required by the court.

We are of the opinion that Solo's denial of rehabilitation benefits to claimant was not based on a reasonable ground.[3] The facts of this case are such that the employer should not even need a statute compelling it to provide rehabilitation to one of its employees injured while in the course of his employment. We should think an employer would want to help a young chap such as Brown get rehabilitated into gainful employment that the handicapped worker is interested in and capable of performing. We do not wish to suggest that Solo had no right to contest or have the court inquire into the matter, but once its own expert told it what the appropriate rehabilitation program was in this case and its own medical expert confirmed the program's feasibility, then it seems to us that further contest on the ground Brown could do some other kind of work, such as assembly line work, was not reasonable. Moreover, to appeal from an adverse decision which its own evidence supports, further underscores the unreasonableness of Solo's stance. The procedure and proof problems faced by the trial court are not to be confused with the

---

**2.** Webster's New Twentieth Century Unabridged Dictionary 1544 (2d ed. 1964).

**3.** 85 O.S.1981 § 30.

"ground" Solo relies upon to defeat the rehabilitation claim.

We, therefore, hold that Solo should pay for the total costs of the proceedings on the rehabilitation issue which shall include a reasonable attorney's fee for the services rendered by the claimant's attorney in the trial court, before the court en banc, and in the appellate courts and the costs of any depositions taken for the vocational training hearing.

## IV

The July 28, 1981, order is, therefore, affirmed with regard to numbered paragraph 2 which orders Solo to pay for 30 months of jewelry training of claimant at Paris Junior College, and reversed as to numbered paragraph 3 relating to assessment of attorney's fees and deposition expenses against Solo. The cause is remanded with directions to determine and assess costs in accordance with the views we have expressed herein.

BOYDSTON, P.J., and BACON, J., concur.