CURTIS A. FENSTER, APPELLANT AND CROSS-APPELLEE, V. CLARK BROTHERS SANITATION ET AL., APPELLEES AND CROSS-APPELLANTS.

455 N.W.2d 169

Filed May 11, 1990.   No. 89-865.

John A. Wagoner for appellant.

Cathleen H. Snell, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The plaintiff appeals from an award of the Workers' Compensation Court finding that he suffered a compensable schedule injury, i.e., a 20-percent permanent partial disability to his right arm, see Neb. Rev. Stat. § 48-121(3) (Reissue 1988), rather than an injury to his body as a whole, see § 48-121(2), which would entitle him to an award based on his loss of earning power. The defendants, Clark Brothers Sanitation and Alliance Insurance Company, cross-appeal the compensation court's finding that the statute of limitations did not bar plaintiff's claim. We reverse and remand for further proceedings, noting plain error, but affirm as to the cross-appeal.

The findings of fact made by the compensation court after rehearing shall have the same effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Brazee v. City of Lincoln*, 234 Neb. 680, 452 N.W.2d 529 (1990); Neb. Rev. Stat. § 48-185 (Reissue 1988).

On September 30, 1981, plaintiff was employed by Clark

Brothers Sanitation as a garbage hauler and suffered a rotator cuff tear to his right shoulder while lifting a full 60-gallon trash barrel.

Plaintiff incurred medical and hospital expenses and was temporarily totally disabled from September 30, 1981, to and including February 15, 1982; from June 8, 1982, to and including August 5, 1982; from January 4, 1983, to and including March 30, 1983; and from August 27, 1986, to and including March 9, 1987.

At the time of this accident, Clark Brothers' insurer was Alliance. Alliance paid plaintiff's medical and hospital bills and disability compensation up to September 14, 1984. In the fall of 1984, Aetna Life & Casualty Company became Clark Brothers' insurer. Thereafter, plaintiff began filing all of his claims, even those relating to his right shoulder injury of September 30, 1981, with Aetna.

Plaintiff underwent surgery for carpal tunnel syndrome in his right wrist on December 4, 1984, and for lateral epicondylitis in his left elbow on November 14, 1985. All medical and hospital expenses as well as compensation benefits for temporary total disability were paid by Aetna.

In 1986, plaintiff returned to Dr. John Albers because he was experiencing recurring problems with his right shoulder. Dr. Albers is the orthopedic surgeon who had performed surgery and cared for plaintiff for the rotator cuff tear, the carpal tunnel syndrome, and the lateral epicondylitis. On October 16, 1986, a staple which had been put in plaintiff's right shoulder in 1983 was surgically removed. Aetna paid medical and hospital expenses for the procedure as well as compensation for temporary total disability from August 28, 1986, to November 12, 1986. On February 12, 1987, on the advice of Dr. Albers, plaintiff visited the Mayo Clinic in Rochester, Minnesota, for an orthopedic examination of his right shoulder. Aetna paid medical and hospital expenses relating to the visit as well as compensation for temporary total disability from February 12 to March 9, 1987.

Plaintiff visited the Mayo Clinic for another examination of his right shoulder on March 31, 1988. None of his expenses relating to this visit have been reimbursed.

On October 16, 1987, plaintiff filed a petition in the Workers' Compensation Court alleging that on or about November 13, 1984, in loading refuse on the truck he was operating, he injured his right shoulder and right arm, which resulted in a permanent and total impairment in the use of his right upper extremity, including the shoulder. Named as defendants were Clark Brothers and Aetna. The compensation court, after a hearing, found that the evidence disclosed the occurrence of only one accident and injury arising out of and in the course of plaintiff's employment with Clark Brothers, which occurred in the latter part of September 1981. According to the court, there was no medical evidence of a causal connection between plaintiff's claimed disability and any accident and injury subsequent to September 1981.

Plaintiff filed another petition in the compensation court on June 7, 1988, alleging an injury to his right shoulder and arm arising in the course of his employment as the result of an accident occurring on or about October 1, 1981. Named as defendants were Clark Brothers and Alliance. In their answer, the defendants alleged that the last compensation benefit or medical expense paid to plaintiff was accomplished on September 14, 1984, and, therefore, more than 2 years having expired from the date of the last payment of compensation on the claim, plaintiff's claim was barred by Neb. Rev. Stat. § 48-137 (Reissue 1988).

An award on rehearing was entered July 27, 1989, following a consolidated hearing on the claim involving Aetna and the claim involving Alliance. The court found that all compensation benefits for the carpal tunnel syndrome and lateral epicondylitis had been paid and that those conditions had no causal connection with the injury of October 1, 1981.

The court further found that as a result of the injury of *October 1*, 1981, in lifting the 60-gallon trash barrel, plaintiff was temporarily totally disabled for those periods of time previously detailed, totaling $60^5/7$ weeks, beginning *October 30*, 1981, and ending on March 9, 1987, and was suffering from a 20-percent permanent partial disability of his right arm. This contrasts with an original award entered by one judge of the compensation court which found plaintiff to have suffered a

50-percent temporary loss of earning power through July 20, 1988, and to be suffering from the same continuing temporary loss of earning power for an additional indefinite period of time.

The compensation court then addressed the defense of the statute of limitations. The court set forth the various details of treatment and payments previously mentioned. It found that Aetna had paid the various hospital and medical expenses associated with the removal of the staple from plaintiff's shoulder in October 1986 and that those payments were made within 2 years of the filing of the consolidated actions then pending in the compensation court. The court went on to find that although those payments were mistakenly made in that they were made for treatment of an injury that predated the period of its coverage, nevertheless, Aetna having been one of Clark Brothers' workers' compensation carriers, the payments were in effect made by the employer and operated to toll the running of the statute of limitations.

The court went on to order payment by Alliance of certain hospital and medical expenses, to award credit to Alliance for certain disability compensation payments previously made, and further to find plaintiff to be suffering from a 20-percent permanent partial disability of the right arm for which compensation benefits were awarded. Finally, the compensation court found that because the defendants had secured a reduction in the amount of the award initially entered, there would be no award of attorney fees.

Plaintiff was examined by Dr. John Yost, an orthopedic surgeon, on September 27, 1988. In his report of the examination, Dr. Yost stated that he felt that plaintiff's subjective complaints far outweighed any and all objective findings. He estimated plaintiff's permanent partial disability of the right upper extremity at 15 percent.

Although the record does not seem to disclose testimony or a report by Dr. Albers, plaintiff's treating surgeon, as to a percent of disability, there is a letter of November 23, 1988, to plaintiff's attorney in which Dr. Albers states that "I feel that as a result of this injury, he has approximately 20% permanent partial physical impairment to his right upper extremity." The award

entered by the compensation court finds that "[b]oth these orthopedic surgeons [Dr. Albers and Dr. Yost] expressed their opinions in terms of the loss of use of the plaintiff's right arm."

Although plaintiff adduced considerable evidence suggesting a severe limitation in his earning capacity and ability to do any kind of physical labor, he conceded during argument that his disability was in the arm. The rather sketchy testimony on this issue given by the plaintiff, although he complains of pain in his shoulder rather than in his arm, seems to suggest that his problem relates to his inability to use his right arm. In testing the sufficiency of evidence to support findings of fact made by the Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Brazee v. City of Lincoln*, 234 Neb. 680, 452 N.W.2d 529 (1990).

The statutory scheme found in § 48-121 compensates impairments of the body as a whole in terms of employability and loss of earning capacity, but compensates impairments of the scheduled members on the basis of loss of physical function. *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983).

It is a well-established rule in Nebraska that an employee suffering a schedule injury is entitled only to the compensation provided for in § 48-121(3), unless some unusual or extraordinary condition as to the other members or parts of the body develops as a result of the injury. *Evans v. American Community Stores*, 222 Neb. 538, 385 N.W.2d 91 (1986). See, also, *Hollinger v. Consolidated Motor Freight*, 223 Neb. 449, 390 N.W.2d 518 (1986). When an employee suffers a schedule injury, the presence or absence of industrial disability (loss of earning capacity) is immaterial. *Goers v. Bud Irons Excavating*, 207 Neb. 579, 300 N.W.2d 29 (1980); *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980).

Whether an injury results in an unusual or extraordinary condition affecting other parts of the body ordinarily presents a question of fact. *Goers v. Bud Irons Excavating, supra.* The test for determining whether a disability is to a scheduled member or the body as a whole is not the situs of the injury, but, rather, the location of the residual impairment. *Nordby v. Gould, Inc., supra.*

Plaintiff adduced substantial evidence that because of his learning disability he was ill equipped to perform other than minimum-paying jobs and his arm disability prevented him from obtaining any type of well-paying labor jobs. According to plaintiff, the unusual or extraordinary condition in this case is that his learning disability prevents his rehabilitative training, thereby preventing him from having any particular earning power.

Plaintiff's position is untenable for two reasons. First, an employee must show by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Hollinger v. Consolidated Motor Freight, supra.* Plaintiff's learning disability, even if it could be considered an "unusual or extraordinary condition as to the other members or parts of the body," was not caused by the injury to his right shoulder. Second, this court has rejected the argument that an injured worker is entitled to an award based on loss of earning power when injury confined to a scheduled member renders the worker unable to engage in work for which he has prior training and experience. See *Broderson v. Federal Chemical Co.*, 199 Neb. 278, 258 N.W.2d 137 (1977).

The evidence supports the factual finding of the compensation court that plaintiff's disability is limited to a permanent partial loss of use of his right arm.

Although it is not assigned as error and although our review is limited to error appearing in the record and is not de novo, we can and do note plain error in the computation of compensation benefits. The compensation court found the first period of temporary total disability to be from *October 30*, 1981, rather than from *September 30*, 1981. Therefore, plaintiff is entitled to temporary total disability compensation for an additional 4$^1$/7 weeks—an increase of $745.71.

The compensation court awarded plaintiff $180 per week for 35 weeks for a 20-percent permanent partial disability to his right arm. Section 48-121(3) (Cum. Supp. 1980) provides, for the loss of an arm, for an award of "sixty-six and two-thirds per cent of daily wages during two hundred twenty-five weeks." Twenty percent of 225 is, of course, 45 weeks. Accordingly, plaintiff is entitled to an additional 10 weeks of compensation

at $180 per week—an increase of $1,800.

Plaintiff was awarded $269.84 as reimbursement for expenses incurred during his two trips to the Mayo Clinic. The expenses total $336.44, or an additional $66.60.

Defendants were ordered to pay $441 to Rochester Methodist Hospital and $1,039.10 to Dr. Robert H. Cofield. Aetna made these payments. However, a $128.20 bill for plaintiff's March 31, 1988, visit to the Mayo Clinic was not paid or included in the award. Therefore, plaintiff's award should be reduced by $1,351.90.

Defendants were given credit for $7,225 in disability compensation paid to plaintiff. However, exhibit 64 discloses that defendants paid $7,225.69 in disability compensation, so plaintiff's award should be reduced by $0.69.

Because this cause must be reversed and remanded for a recomputation of the benefits, which will show that plaintiff is entitled to an increase in his award of $1,259.72, he is entitled to an attorney fee pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1988).

We now address defendants' cross-appeal insisting that the statute of limitations barred this action by plaintiff.

The facts are relatively simple and straightforward. If we are limited to a consideration of the payments of compensation benefits actually made by Alliance, more than 2 years intervened between the last payment and the filing of this action, and thus the action would be barred under the provisions of § 48-137. On the other hand, if the payments made by Aetna on behalf of Clark Brothers are properly chargeable to, or rather are capable of being credited to, Clark Brothers, the statute has not run.

The court on rehearing found the statute of limitations did not bar plaintiff's claim. The court reasoned that after September 14, 1984, the date of Alliance's last payment, Aetna paid various medical expenses which related to plaintiff's shoulder injury. According to the court, these payments, although mistakenly made for treatment of an injury which predated the period of Aetna's insurance coverage, were payments made by the employer, Clark Brothers, and operated to toll the running of the statute of limitations as to both Clark

Brothers and Alliance, the insurer on the date of the shoulder injury.

Defendants cite the following from 2B A. Larson, The Law of Workmen's Compensation § 78.43(e) at 15-272.27 (1989): "Payment of compensation tolls the statute only as to the injury for which the payment is intended as compensation; it cannot toll the statute as to another injury received in a prior accident." According to defendants, all payments made by Aetna were intended to be compensation for an alleged injury of November 13, 1984, not for the shoulder injury sustained in 1981, and therefore the payments should not have the effect of tolling the statute of limitations.

Defendants ignore the following finding of the compensation court:

> On November 7, 1984, the plaintiff consulted Dr. Albers for pain in his right arm and right hand. At the time of that visit, Dr. Albers also x-rayed the plaintiff's right shoulder. This charge was paid by Aetna Life and Casualty Company on April 22, 1985. When the plaintiff had the staples removed from his right shoulder in October of 1986, Aetna paid various hospital and medical expenses incurred at that time as reflected in Exhibit 72 and both of these actions were filed within two years of the payments made by Aetna Life and Casualty Company. The payments made by Aetna were mistakenly made, in that they were paid for treatment of an injury that predated the period of its insurance coverage.

Although the checks from Aetna all listed November 13, 1984, as the date of loss, it is clear that some of the checks are for expenses related to the shoulder injury which occurred in September 1981. Therefore, the provision cited from the Larson treatise is not applicable to the instant case.

Defendants further argue that Aetna's payments were voluntary and not their fault and, therefore, they should not be bound by the actions of Aetna. The Idaho Supreme Court addressed a similar argument in *Facer v. E. R. Steed Equipment Company*, 95 Idaho 608, 514 P.2d 841 (1973). The plaintiff was injured in an accident which occurred sometime in March 1969 while the State Insurance Fund (SIF) was the employer's surety.

On April 1, 1969, American Hardware Mutual Insurance Company (AHMIC) became the employer's surety. On December 31, 1969, AHMIC paid medical expenses relating to the March 1969 injury. The plaintiff filed a petition for workers' compensation on June 1, 1971. SIF argued that the statute of limitations had run and it could not be bound by the voluntary payments made by a third party. The court disagreed, finding that payment made by AHMIC

> was compensation for injuries for which claimant's employer admits liability and must be considered, in substance, as compensation paid by the employer. By making this payment claimant's employer through its surety tolled the statute of limitations and bound the appellant [SIF] to his act. Under the facts presented by the record it would be a grave injustice to disallow claimant compensation for his injuries because he was unaware of a change of sureties by his employer.

*Id.* at 613, 514 P.2d at 846. See, also, *Bureau of Adult Corrections v. Dernberger*, 529 A.2d 245 (Del. 1987).

Defendants' final argument is that by the time plaintiff had the staple removed from his shoulder on October 16, 1986, the 2-year statute of limitations which began running on September 14, 1984, the date of the last payment made by Alliance, had expired. Therefore, according to defendants, the voluntary payment by Aetna made after the applicable statute of limitations had run could not toll the statute of limitations which had already expired. Defendants' argument, although legally correct, overlooks one important fact. As found by the compensation court, Aetna made a payment on April 22, 1985, for a visit to Dr. Albers for pain in plaintiff's right arm and right hand, during which visit Dr. Albers x-rayed plaintiff's right shoulder. This payment, made before the applicable statute of limitations had run, could and did toll the statute of limitations.

The judgment of the Workers' Compensation Court is reversed, and the cause is remanded for further proceedings consistent with this opinion regarding the appeal of the plaintiff, but the judgment is affirmed as to the cross-appeal. Plaintiff is awarded $1,000 to apply to his attorney fees.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.