MICHAEL R. YAGER, APPELLANT, V. BELLCO MIDWEST, APPELLEE.
464 N.W.2d 335

Filed January 11, 1991.   No. 90-175.

Dennis C. Magnuson, of Gast & Peters, for appellant.

Jon S. Reid, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff, Michael R. Yager, appeals from an order on rehearing by the Workers' Compensation Court. The order reduced certain awards made by the court on first hearing. We reverse and remand on the issue of rehabilitation benefits and affirm in certain other respects.

Plaintiff was employed by defendant-appellee Bellco Midwest as a construction worker. At the time of the accident in this case, plaintiff was 28 years old. He had dropped out of high school after the 10th grade and had received a GED in 1988 without the necessity of classroom work. He had worked in "warehousing" in loading and unloading trucks and, at one time, had been an assistant supervisor. He had also worked in a packinghouse and for other construction companies, as well as for Bellco. He had been employed by Bellco for over a year as of

the date of the accident. He had also served about a year in the U.S. Navy.

Plaintiff was injured at defendant's construction site on July 29, 1985, when a section of wall he was helping to lift into place broke loose and fell on his leg. The accident resulted in a fractured right femur and internal derangement of the right knee. Plaintiff's recovery was slow because of a delayed union of the femur. On September 10, 1985, Dr. Chester Waters performed a closed intramedullary rodding operation on plaintiff. Intramedullary rodding was required to achieve stability in the leg. On September 19, plaintiff was discharged from the hospital. For a period of over 9 months, plaintiff needed either a wheelchair or crutches to get around. On April 17, 1986, arthroscopic surgery was performed on plaintiff's right knee.

In a July 30, 1986, letter concerning plaintiff, Waters estimated "a permanent partial impairment to the right lower extremity of approximately 40-50 percent based on quadriceps adhesion and resulting loss of knee motion from his femur fracture . . . ." In a report dated November 5, 1986, Waters summarized plaintiff's injuries as "a closed fracture of the right femur, and post traumatic tibial articular chondromalacia." He set out certain limitations and stated that no further treatment was recommended and that "[w]ork capacity restrictions are permanent." He stated in a corrected report that this resulted in a 45-percent permanent partial physical impairment to the right lower extremity. Waters made no reference to any back injury. He released plaintiff "for work activity" effective November 1, 1986.

Plaintiff testified that after the period of time when he was on crutches or in a wheelchair, he began to experience pain in his lower back. He testified that he had told Waters and others in Waters' office of his back problem, but that they did not record the complaints. Nothing in the reports of Waters found in the record before this court shows any indication of back problems.

On February 20, 1987, plaintiff saw Dr. Timothy Fitzgibbons. Fitzgibbons' report of that date is the first recorded evidence of plaintiff's back trouble. Over the course

of the next year Fitzgibbons treated plaintiff's back. Fitzgibbons stated that plaintiff reached maximum medical improvement on May 2, 1988, and stated that plaintiff had a permanent impairment rating of 5 percent for his back strain, in addition to his right leg impairment.

During the 3 years following his accident, plaintiff participated in a variety of different tests, analyses, and evaluations, both through the Nebraska Division of Rehabilitation Services and through a private rehabilitation consultant hired by defendant. Due to disagreements between the parties, and because of plaintiff's frustration at not being able to begin a rehabilitation program, plaintiff hired his own rehabilitation consultant.

On August 18, 1988, plaintiff filed this petition seeking temporary total disability, permanent partial disability, and rehabilitation benefits because of his leg and back injuries. Defendant denied there was a back injury, denied that plaintiff was entitled to rehabilitation benefits, and alleged that all expenses incurred due to the leg injury had been paid.

At the first hearing, the one-judge compensation court found compensable injuries to plaintiff's leg and back. The court awarded temporary total disability benefits from July 29, 1985, through November 21, 1988, and awarded 50 percent temporary partial disability thereafter for an indeterminate period. The court also awarded rehabilitation benefits in the form of a 2-year business management training program.

Defendant appealed. On rehearing, on July 12, 1989, evidence was adduced on the rehabilitation issue, and plaintiff testified that in November 1988, he obtained employment at a gas station as a "drive attendant" for 31 hours per week at $3.35 per hour. At the time of the rehearing in July 1989, plaintiff held the same job.

At the hearing John Greene, an expert in vocational rehabilitation who had been employed by defendant and its insurance carrier, testified that plaintiff "had average learning capabilities on the testing, so he could have participated in a number of different [vocational rehabilitation] programs."

Another witness, who was an employee of the Nebraska Division of Rehabilitation Services, testified that plaintiff "had

the ability to handle a two-year training program" and that such programs were available at Metropolitan Community College. This witness further testified that these plans were denied by defendant's insurance company and not implemented.

Another of plaintiff's witnesses testified that the proposed 2-year plan in business management would help in obtaining jobs and in obtaining promotions in such jobs.

Greene, when called as an expert witness by defendant, testified that plaintiff has "some reasonable skills to work with. I don't see any problems with really rehabilitating him." This witness further testified:

Q Now, the jobs you just talked about, what's the entry level pay on a job like that?

A As I remember, it was about $5.50- to $8.20-an-hour, which would be after a training program was completed.

. . . .

Q Would a training program like that increase his ability to gain access to the labor market?

A Sure, any time that we develop employable skills for him, that's going to increase his marketability.

This witness had some questions about the advisability of the 2-year business management program, and further testified on the question of the possible length of plaintiff's rehabilitation:

Q Is it true that a large part of that disagreement was also with the length of the program involved to rehabilitate Mike?

A Well, it wasn't on my part as far as looking at some kind of option. Iowa Mutual had asked us to look at six-month programs, but I had previously indicated a report that even up to two-year training programs would be appropriate for helping Mike.

Q So it's true that, while it was not necessarily your opinion that a six-month program would be best for Mike, that limitation was placed on your efforts by Iowa Mutual?

A They had requested that I explore six-month training programs. I didn't take it as a hard-and-fast rule that I couldn't go above six months. I took it more as, "Were

there reasonable alternatives that would prepare him for employment using a six-month training approach?"

In its award on rehearing, the three-judge panel did not mention or allow any benefits for the back injury, shortened temporary total disability benefits to end November 1, 1986, and determined there was a 45-percent permanent partial disability to plaintiff's right leg. The court also refused to grant vocational rehabilitation, stating in part:

#### IV.

One of the issues listed in the Pretrial Order is whether plaintiff is entitled to rehabilitation services. The evidence is that plaintiff got a job on November 21, 1988, which he still retains. Therefore, he is not entitled to rehabilitation benefits.

. . . .

#### VII.

Another issue listed by the parties in the Pretrial Order is whether plaintiff failed or refused rehabilitation services offered by the defendant without reasonable cause and as a consequences [sic] thereof whether compensation benefits otherwise payable should be suspended reduced or limited. The Court finds that defendant has failed to prove this allegation.

Plaintiff timely appealed and in this court sets out the following assignments of error, contending the compensation court erred (1) in holding plaintiff's obtaining of a minimum-wage job was sufficient ground for denial of vocational rehabilitation benefits; (2) in finding that plaintiff's back injury was not work related, and by ignoring the undisputed testimony of plaintiff's treating physician as to the causation of such injury; (3) in not determining the loss of plaintiff's earning power or capacity due to his injuries; (4) in reducing the duration of plaintiff's temporary total disability benefits; and (5) in failing to award plaintiff statutory penalties and attorney fees.

In our review, findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. *Way v. Hendricks*

*Sodding & Landscaping, Inc., ante* p. 519, 462 N.W.2d 99 (1990); *Binkerd v. Central Transportation Co., ante* p. 350, 461 N.W.2d 87 (1990).

We have also held: "Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the Workers' Compensation Court." *Hernandez v. Farmland Foods*, 227 Neb. 629, 632, 418 N.W.2d 765, 767 (1988); *Hewson v. Stevenson*, 225 Neb. 254, 404 N.W.2d 35 (1987). An order based on findings of fact made by the compensation court may be reversed, however, if those findings do not support the court's order. Neb. Rev. Stat. § 48-185(4) (Reissue 1988); *Bituminous Casualty Corp. v. Deyle*, 225 Neb. 82, 402 N.W.2d 859 (1987).

To determine whether findings of fact made by the compensation court support an order granting or denying vocational rehabilitation benefits, we must consider the findings of fact in light of the statute authorizing vocational rehabilitation benefits, Neb. Rev. Stat. § 48-162.01 (Reissue 1988).

Section 48-162.01(1) provides in part:

One of the primary purposes of the Nebraska Workers' Compensation Act shall be restoration of the injured employee to gainful employment.

Section 48-162.01(3) provides in part:

When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to suitable employment.

Section 48-162.01(6) provides for vocational rehabilitation

[w]henever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for total or partial disability which is or is likely to be permanent may be rehabilitated to the extent that he or she will require less care and attendance or to the extent that he or she can become gainfully employed or increase his or

her earning capacity and that it is for the best interests of such person to undertake such training, rehabilitation, or education . . . .

In considering these statutory provisions, this court has affirmed denials of vocational rehabilitation where the compensation court found that the claimant suffered no "disability which is or is likely to be permanent," *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986); where claimant was able "to perform work for which he or she [had] previous training or experience," *Evans v. American Community Stores*, 222 Neb. 538, 385 N.W.2d 91 (1986); and where vocational rehabilitation was found not "for the best interests" of the injured worker, *Pollock v. Monfort of Colorado*, 221 Neb. 859, 381 N.W.2d 154 (1986).

The compensation court in this case offers none of these justifications to support its award. The court merely states: "The evidence is that plaintiff got a job on November 21, 1988, which he still retains. Therefore, he is not entitled to rehabilitation benefits."

This order by the compensation court might be construed to comport with the language in § 48-162.01(3), which gives the compensation court authority to deny rehabilitation to the claimant if it is not "reasonably necessary to restore him or her to suitable employment." This depends upon what is meant by the terms "restore" and "suitable employment" in § 48-162.01(3), and the related term "gainful employment" in § 48-162.01(1). The proper construction and application of statutory terms is a question of law. *In re Estate of McFayden*, 235 Neb. 214, 454 N.W.2d 676 (1990). This court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Elrod v. Prairie Valley*, 214 Neb. 697, 335 N.W.2d 317 (1983).

Although this court has never defined the terms in question, definitions from other jurisdictions are instructive. In *Ex Parte Beaver Valley Corp.*, 477 So. 2d 408 (Ala. 1985), the Alabama Supreme Court interpreted the phrase "restore the employee to gainful employment" in that state's workers' compensation statute, stating:

"Restore" means to put back. The ability to be gainfully

employed must be put back or restored through vocational rehabilitation. Gainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be "suitable." By "suitable" we mean employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude. . . . If the employee has lost the ability to obtain suitable gainful employment due to a compensable injury, then, barring any other reasonable basis to deny vocational rehabilitation, he should be entitled to have the ability restored through an appropriate plan of vocational rehabilitation.

*Id.* at 412. See, also, *Solo Cup Co. v. Brown*, 660 P.2d 655, 657 (Okla. App. 1982) (where the court refused to adopt an employer's "apparent" contention that "if a crippled worker can sell apples or pencils in the town square or perform some type of boring routine task on, say, an assembly line, he is not entitled to vocational rehabilitation regardless of his pre-injury or postinjury interests, aptitudes or abilities"); *Walker v. New Fern Restorium*, 409 So. 2d 1201, 1203-04 (Fla. App. 1982) ("[t]o refuse rehabilitation benefits because of the availability of any employment, no matter how ill-suited to the particular individual, would be counter to the statutorily expressed goal of rehabilitation—to return the individual to '*suitable* gainful employment'" (emphasis in original)); *Frame v. Crown Zellerbach*, 63 Or. App. 827, 665 P.2d 879, 881 (1983) ("[t]here is no requirement that a worker who has been offered *any* job paying *something*, even minimum wage, is gainfully employable and therefore ineligible for retraining" (emphasis in original)).

The consensus which may be derived from these opinions is that an injured claimant cannot be denied vocational rehabilitation benefits solely because he or she has accepted some kind of employment. We hold as a matter of law that accepting a job paying minimum wage does not automatically "restore" a claimant to "suitable" or "gainful" employment pursuant to § 48-162.01, where the claimant's previous employment was at a significantly higher wage. At the time of

his injury, plaintiff was earning $220 per week and was an able, strong construction worker, with possibilities of progressing in that type of manual labor. In working for defendant for 1 year, his hourly wage had increased from $5 to $5.85. For a different construction employer, he had earlier earned $10 per hour. He was not able to return to that type of work.

It is inappropriate to hold, from the mere fact that the injured worker has accepted a job resulting in a $104 weekly wage, that, by that act alone, he has foreclosed himself from some training that would enable him to return to the approximate level of the salary he was earning when he was injured. The difference between the wages earned before and after the injury is only $116 per week, but proportionately it is a large difference. To ignore such a difference is to ignore the statutory goal of returning the worker to suitable, that is, comparable, employment. A finding that claimant currently maintains a minimum-wage job is not, in and of itself, sufficient to support a denial of vocational rehabilitation benefits. Plaintiff's first assignment of error has merit, and the cause is remanded for further proceedings on that issue. In that connection, we note that the appropriateness of certain employment for plaintiff might be affected by *State v. Yager,* *ante* p. 481, 461 N.W.2d 741 (1990).

Plaintiff alleges in his second assignment of error that the compensation court erred in finding plaintiff's back injury was not work related. The first answer to this allegation is that the compensation court made no finding at all concerning a back injury, despite the fact that the compensability of this injury was an important point at the rehearing. It is true, as plaintiff alleges, that the testimony of Dr. Fitzgibbons was not refuted as to the existence or causation of a back injury to plaintiff. Dr. Waters' report did not mention such an injury one way or the other, nor was Waters asked any questions in that regard. The compensation court is not bound by the testimony of an expert, nor is this court to determine the weight and credibility of such evidence. *Mutual of Omaha v. Broussard,* 233 Neb. 916, 448 N.W.2d 600 (1989). In our review, we cannot say the compensation court erred in this regard. Apparently, that court chose not to believe the undisputed testimony of plaintiff's

medical witness, but this court cannot say that decision was erroneous as a matter of law. Plaintiff's second assignment of error does not require reversal.

Plaintiff alleges in his third assignment of error that the compensation court erred in not computing his loss of earning capacity due to his injuries. This court has held that loss of earning capacity or earning power is relevant only to impairment of the body as a whole. *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983); *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986). Impairment to a scheduled member, such as plaintiff's leg, is measured on the basis of loss of physical function. See, Neb. Rev. Stat. § 48-121 (Reissue 1988); *Nordby v. Gould, Inc., supra.* The compensation court did not find that plaintiff suffered impairment to his body as a whole. This assignment of error is without merit.

In his fourth assignment of error, plaintiff contends that the compensation court erred in determining that his "temporary total disability should not continue up to and including May 8, 1988." The determination as to the length of temporary total disability is one of fact. We make no determination in this area, because the situation will have to be reevaluated in view of the remand herein.

Finally, plaintiff assigns as error the refusal of the compensation court to assess statutory penalties and attorney fees. The three-judge rehearing panel agreed with the defendant's contention that no fees are allowable because the employer obtained a reduction in the award.

The award of attorney fees under the Workers' Compensation Act is governed by Neb. Rev. Stat. § 48-125 (Reissue 1988). That statute says in part:

> If the employer files an application for a rehearing before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in the Supreme Court.

We have held that when the employer files an application for rehearing from a one-judge award and obtains a reduction and the Supreme Court affirms the reduction on appeal by the employee, no attorney fees may be assessed against the employer. See *Butler v. Midwest Supply Co.*, 212 Neb. 421, 322 N.W.2d 815 (1982). We have also held that when the employer appeals from an award on rehearing and the employer receives a reduction in the Supreme Court, the employer may not be taxed for the employee's attorney fees for the proceedings before the Supreme Court. See *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985). In *Goers v. Bud Irons Excavating*, 207 Neb. 579, 300 N.W.2d 29 (1980), we held that when the employer has obtained a reduction on rehearing but then appealed to the Supreme Court and did not receive a further reduction, the employee's attorney fees before the Supreme Court would be taxed as costs against the employer.

In this case, the employer filed an application for rehearing from the first hearing before the compensation court and obtained a reduction on rehearing. The employee then appealed to this court from the award on rehearing and obtained a reversal and remand for further proceedings from this court, as set out above in this opinion.

The case most analogous to the situation in the present case is *Akins v. Happy Hour, Inc., supp. op.* 209 Neb. 748, 311 N.W.2d 518 (1981). In *Akins*, the employer filed an application for rehearing after an award of a single judge of the compensation court. On rehearing, the full compensation court disallowed the award. The employee then appealed to the Supreme Court, and we reinstated the original award.

The employee in *Akins* argued that he was entitled to attorney fees for both appeals. This court held that the statute did not authorize fees for either appeal, relying on *Rexroat v. State*, 143 Neb. 333, 9 N.W.2d 305 (1943). In *Rexroat*, under a fact situation similar to that in *Akins*, the court held that the right to attorney fees in compensation cases is purely statutory and that the statute did not authorize fees under the situation presented.

Three dissenting judges in *Akins* opined that fees should have been awarded. They contended that to award fees in a

situation where an employer twice failed to obtain a reduction, but not to award fees in a situation where the net result was the same, merely because of an erroneous intervening reduction, constituted an unduly technical reading of the statute.

Whether one applies the rationale of the majority opinion or the dissent in *Akins*, no attorney fees may be granted in this case for either the rehearing or this appeal, because this case differs factually from *Akins*. As far as the record before us discloses, the employer has obtained a net reduction from the original one-judge award, based primarily on the compensability of plaintiff's back injury, despite our remand on the rehabilitation issue. Because this disposes of the fee issue, we need not determine whether reversal for reconsideration of the issue of rehabilitation may constitute an "award" under § 48-125.

Statutory penalties are not allowed. Plaintiff's attorney has not directed us to, nor does our search of the record disclose, any evidence that any amounts relating to plaintiff's leg injury were not timely paid.

The decision of the Workers' Compensation Court is in part affirmed and is in part reversed, and the cause is remanded for reconsideration of the issue of vocational rehabilitation benefits in accord with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.