CARL STANSBURY, APPELLANT, V. HEP, INC., APPELLEE.
530 N.W.2d 284

Filed April 18, 1995.    No. A-94-813.

Gordon Peterson, of Orton, Brown, Thomas & Peterson, for appellant.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, for appellee.

SIEVERS, Chief Judge, and MILLER-LERMAN, Judge, and HOWARD, District Judge, Retired.

HOWARD, District Judge, Retired.

Carl Stansbury appeals from the Workers' Compensation Court review panel's decision upholding the order of the trial court which awarded 12 weeks of vocational rehabilitation; awarded no additional temporary total disability benefits beyond those already paid by HEP, Inc.; and found that Stansbury had suffered a 10-percent loss of earning capacity.

Stansbury and HEP, Inc., entered into a partial settlement agreement before trial, in which the parties stipulated that Stansbury had a compensable injury; stipulated that they would compromise all claims for benefits which accrued through August 27, 1992, for a certain sum; and agreed that HEP, Inc., would pay all medical expenses incurred through August 27. The issues of whether Stansbury was entitled to additional benefits and medical expenses beyond August 27 and whether he was entitled to vocational rehabilitation were not settled. Therefore, Stansbury filed a petition, and a hearing was held on the issues. For the reasons stated below, we affirm in part and reverse and remand in part.

## STATEMENT OF FACTS

Stansbury was employed by HEP, Inc., as an apprentice plumber on May 9, 1991, when he injured his back. Stansbury filed a claim for workers' compensation benefits, which was dismissed on May 28, 1992, after a first hearing was held before a single judge of the court. In lieu of a rehearing, the parties agreed to enter into a compromise settlement of all of Stansbury's claims which accrued up to the date of the scheduled rehearing, August 27, 1992. The parties stipulated in the agreement that Stansbury had suffered a compensable injury arising out of and in the course of his employment with HEP, Inc., and that the accident occurred on May 9, 1991. In the agreement, HEP, Inc., agreed to pay all medical expenses Stansbury had incurred from May 9, 1991, to August 27, 1992. In addition, HEP, Inc., agreed to pay 4 weeks of temporary total disability benefits for the period of May 20 up to and including June 16, 1991. According to the agreement, after June 16, Stansbury had obtained part-time employment with Thornhill Amusements in Texas. The agreement provided that payment of the 4 weeks of benefits was in settlement of all Stansbury's claims for temporary total or temporary partial benefits which had accrued from the time of the accident through August 27, 1992.

The settlement agreement also provided that issues and claims for future medical bills, compensation benefits, and entitlement to vocational rehabilitation were unsettled and

therefore open for further determination. On September 1, 1993, Stansbury filed a supplemental petition, alleging that he had reached maximum medical improvement and claiming that he was entitled to additional temporary total and partial disability benefits, permanent partial disability benefits, and vocational rehabilitation.

In the evidence before us is an October 28, 1992, report from Dr. Craig A. Banta, Stansbury's attending physician, which states that Stansbury sought treatment from Dr. Banta because he was still having back pain after the accident. Dr. Banta's diagnosis was that Stansbury sustained a lumbar sprain injury with persistent muscle spasm and myofacial syndrome. Dr. Banta continued to see Stansbury and treat his back pain until December 1, 1992, when the doctor released Stansbury to light-duty work because his pain had become more manageable, but Dr. Banta recommended that Stansbury still undergo a CT scan of the spine. A scan performed on December 15 revealed herniation at both the L4-5 and L5-S1 levels. In a letter to HEP, Inc.'s insurer, Dr. Banta stated:

> Patient should not perform manual labor with frequent lifting, bending or stooping. The patient is completely employable at a light duty job. The patient does have history of background in electronics and I would feel that he would be able to perform this activity without difficulty assuming that recurrent and heavy lifting is not involved.

On February 18, 1993, Dr. Banta completed a questionnaire drawn up by Stansbury's attorney, in which Dr. Banta stated that he was capable of evaluating Stansbury's permanent impairment and that he believed Stansbury suffered a 5-percent permanent impairment of the whole body.

Also in evidence is a report from Dean N. Venter, a vocational evaluator. Venter stated that according to Stansbury's employment history, Stansbury's experience involved heavy work, including frequent lifting of up to 50 pounds and occasional lifting of up to 100 pounds. Venter noted that according to Dr. Banta, Stansbury should not perform manual labor and is completely employable at a light-duty job. In Venter's opinion, if Stansbury were limited to medium work,

his loss of earning capacity would be approximately 15 to 20 percent, and if Stansbury were limited to light duty, the loss of earning capacity would be approximately 25 to 30 percent. However, according to a report by Gina Jones, another vocational evaluator, Stansbury was capable of performing moderately heavy work.

On December 23, 1993, Venter formulated a vocational rehabilitation plan which he recommended for Stansbury because it would allow Stansbury to perform electrical repair work, and such work would be light duty. Such work, Venter stated, would reduce Stansbury's loss of earning capacity. Venter's recommended plan stated that Stansbury should obtain an associate degree in electrical technology at Southeast Community College, which would require 2 years of education.

At the hearing, Stansbury testified that after his back injury, he worked for Thornhill Amusements from June to December 1991 for $2^{1}/_{2}$ hours a day at $4.25 per hour. Stansbury's job with HEP, Inc., required him to work 40 hours per week, for which Stansbury earned $6 per hour, or $240 per week. Stansbury stated that he wanted to work more hours at Thornhill, but business was slow and Thornhill did not need him to work full time. In 1992, Stansbury worked in June and July for a furniture store, which paid commission. Stansbury earned about $1,000 to $1,100 per month. Stansbury was then laid off, and he received unemployment compensation. On cross-examination, Stansbury admitted that the employment market in Texas was much tighter than in Nebraska and that Texas had an unemployment rate of about 15 percent. Stansbury continued to look for work from August 1992 until more than a year later. In October 1993, Stansbury got a job installing water softeners. Stansbury works approximately 2 days per week, earning about $150 to $200 per day, or $300 to $400 per week. Stansbury testified that his back still causes him problems on his current job installing water softeners and that he suffers from muscle spasms, cramps, and numbness. However, Stansbury admitted that he has not missed any work as a water softener installer because of his symptoms. Stansbury testified that his current job requires him to occasionally lift a water softener, which weighs about 75 pounds, and that he believes he

is capable of lifting 30 to 40 pounds several times an hour over an 8-hour day.

The trial court found that Stansbury was unable to perform the work for which he has had previous training and therefore awarded Stansbury vocational rehabilitation, to be limited to a 12-week period of job placement. The trial court found that although Stansbury testified to lengthy periods of unemployment, he did not produce medical evidence to show that he was unable for physical reasons to perform remunerative employment at a like or similar wage within his restrictions, and that it was more likely that his unemployment was due to the poor economy in Texas. Therefore, the court refused to award temporary disability benefits beyond those paid by HEP, Inc., under the settlement agreement.

In addition, the court noted that there was conflicting testimony regarding the extent of Stansbury's permanent partial disability. The court stated that in consideration of the medical evidence, Venter's report, Stansbury's testimony, and his history of heavy labor, it found that Stansbury had a 10-percent loss in earning capacity. Stansbury appealed to the review panel, which upheld the trial court's order.

## ASSIGNMENTS OF ERROR

Stansbury alleges that the trial court erred when it (1) did not award the vocational rehabilitation plan submitted by Venter; (2) did not award temporary total disability benefits after August 27, 1992; and (3) found that Stansbury had suffered only a 10-percent loss of earning capacity.

## STANDARD OF REVIEW

■ A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994).

■ In determining whether to affirm, modify, reverse, or set

aside the judgment of the review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Id.*

■ The findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed upon appeal to a Workers' Compensation Court review panel unless they are clearly wrong, and if the record contains evidence to substantiate the factual conclusions reached by the trial judge, the review panel shall not substitute its view of the facts for that of the trial judge. *Id.*

## ANALYSIS
### *Vocational Rehabilitation Benefits.*

Stansbury argues that once the trial court has determined that a worker is entitled to vocational rehabilitation services, it is not free to fashion its own vocational rehabilitation plan. We note that Stansbury's accident occurred on May 9, 1991. Under the statute in place at the time of Stansbury's accident,

> [a]n employee who has suffered an injury covered by the Nebraska Workers' Compensation Act shall be entitled to prompt medical and physical rehabilitation services. When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to suitable employment.

Neb. Rev. Stat. § 48-162.01(3) (Reissue 1988).

Subsection 6 of the same statute provided:

> Whenever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for total or partial disability which is or is likely to be permanent may be rehabilitated to the extent that he or she will require less care and attendance or to the extent that he or she can become gainfully employed or increase his or her earning capacity and that it is for the best interests of such person to undertake such training, rehabilitation, or

education . . . .

Under this old statutory scheme, the compensation court made a factual determination whether vocational rehabilitation would restore the employee's ability to be employed in another position with remuneration similar to that earned prior to the injury. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). " 'If the employee has lost the ability to obtain suitable gainful employment due to a compensable injury, then, barring any other reasonable basis to deny vocational rehabilitation, he should be entitled to have the ability restored through an appropriate plan of vocational rehabilitation.' " *Id.* at 896, 464 N.W.2d at 340. In practice, often both the claimant and the employer would offer their own vocational rehabilitation experts' testimony regarding whether the employee was entitled to vocational rehabilitation and what was an appropriate plan. It is under this statutory scheme that the trial court determined Stansbury's eligibility for vocational rehabilitation and the appropriateness of the rehabilitation plan offered by Stansbury.

In 1993, the Nebraska Legislature adopted L.B. 757, which revised the workers' compensation statutes. The provision in L.B. 757 which modified the vocational rehabilitation sections in § 48-162.01 became effective on January 1, 1994. The hearing on Stansbury's petition was held on February 4, 1994.

L.B. 757 changed the procedure in 48-162.01 regarding the determination of whether an employee is entitled to vocational rehabilitation benefits and whether a certain plan is appropriate. First, the legislative bill deleted that portion of subsection 6 quoted above, which provided that the trial judge make a factual determination whether there was a "reasonable probability" that with vocational rehabilitation an employee's earning capacity would improve. Instead, under the revised version of § 48-162.01 (Reissue 1993), the statute now provides:

If entitlement to vocational rehabilitation services is claimed by the employee, the employee and the employer or his or her insurer shall attempt to agree on the choice of a vocational rehabilitation counselor from the directory of vocational rehabilitation counselors established pursuant to subsection (2) of this section. If they are

unable to agree on a vocational rehabilitation counselor, the employee or employer or his or her insurer shall notify the compensation court, and the compensation court shall select a counselor from the directory . . . . Only one such vocational rehabilitation counselor may provide vocational rehabilitation services at any one time, and any change in the choice of a vocational rehabilitation counselor shall be approved by the compensation court. The vocational rehabilitation counselor so chosen or selected shall evaluate the employee and, if necessary, develop a vocational rehabilitation plan. *It shall be a rebuttable presumption that any vocational rehabilitation plan developed by such vocational rehabilitation counselor and approved by a vocational rehabilitation specialist of the compensation court is an appropriate form of vocational rehabilitation.*

(Emphasis supplied.)

In addition, the statute provides that there is a rebuttable presumption that an evaluation and opinion of loss of earning capacity by a vocational rehabilitation counselor, selected as above, is correct.

While neither party has assigned or briefed the question of which version of § 48-162.01 should have been applied by the trial court, we reserve the right to notice plain error. See *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

The question before us is, Which version of the statute should apply to the case at hand? If the provision regarding the selection of vocational rehabilitation counselors and the presumption that such counselors' opinions are correct is a substantive change, rather than a procedural change, then the statute in force at the time of Stansbury's accident would apply. See *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 460 N.W.2d 671 (1990). However, if the change made by L.B. 757 to § 48-162.01 is procedural, the Workers' Compensation Court

was bound to follow the version of the statute in effect at the date of the compensation court's judgment. See *Behrens, supra*. In the case at hand, the hearing took place after the effective date of the amendment to § 48-162.01.

> It is generally considered in the law that a substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. [Citations omitted.] A procedural right, on the other hand, is considered to simply be the method by which an already *existing* right is exercised.

*Smith v. Fremont Contract Carriers*, 218 Neb. 652, 665, 358 N.W.2d 211, 220 (1984) (Krivosha, C.J., concurring in the result). Accord *Behrens v. American Stores Packing Co.*, 228 Neb. 18, 421 N.W.2d 12 (1988).

Under the revised statute, if the employee and employer cannot agree on a vocational rehabilitation counselor to evaluate the employee, the amended language of § 48-162.01 does not foreclose either party from offering its own vocational rehabilitation counselor's expert testimony to rebut the opinion of the court-appointed vocational rehabilitation counselor. The amendment to the statute does not take away an employee's right to vocational rehabilitation, nor does it take away that employee's right to present evidence to the court if there is a dispute over the employee's eligibility for vocational rehabilitation. The amendment to § 48-162.01 therefore changes only the method by which an employee's right to vocational rehabilitation and the right to be heard on his or her claim are exercised. Accordingly, we find that the provisions of L.B. 757 which amended § 48-162.01 are procedural changes, and thus, the court was required to apply § 48-162.01 as amended by L.B. 757, which was the version of the law as it existed at the time judgment was rendered. We must therefore reverse and remand that portion of the judgment regarding Stansbury's eligibility for vocational rehabilitation and the kind of vocational rehabilitation benefits awarded.

*Loss of Earning Capacity.*

In addition to L.B. 757's change to § 48-162.01 regarding

vocational rehabilitation plans, L.B. 757 also amended the statute to provide:

> Any loss-of-earning-power evaluation performed by a vocational rehabilitation counselor shall be performed by a counselor from the directory established pursuant to subsection (2) of this section and chosen or selected according to the procedures described in this subsection. It shall be a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct.

As we stated above, the provision requiring parties to agree on a vocational rehabilitation counselor to provide a loss of earning power analysis or have the court appoint a counselor to provide such an analysis is a procedural change. Therefore, as we stated above, § 48-162.01 as amended by L.B. 757 should have been applied to the case at hand. We must therefore reverse and remand that portion of the judgment which makes a finding regarding loss of earning capacity.

*Temporary Total Disability Benefits.*

Stansbury alleges the trial court erred when it did not award additional temporary total disability benefits after August 27, 1992. Stansbury and HEP, Inc., had entered into a settlement agreement, in which HEP, Inc., agreed to pay Stansbury temporary total disability benefits for 4 weeks for the period of May 20 up to and including June 16, 1991. According to the agreement, after June 16, Stansbury had obtained part-time employment with Thornhill Amusements in Texas. The agreement provided that payment of the 4 weeks of benefits was in settlement of all Stansbury's claims for temporary total or temporary partial benefits which had accrued from the time of the accident through August 27, 1992. The evidence shows that Stansbury worked for Thornhill Amusements from June until December 1991, for $2^1/_2$ hours a day and that Stansbury wanted to work more hours, but business was slow and Thornhill did not need him to work full time. In 1992, Stansbury worked in June and July. Stansbury was then laid off, and he received unemployment compensation. Stansbury offered no evidence to establish that his part-time work and his

time of unemployment were related to his back injury. Instead, the evidence appears to establish that Stansbury's sporadic employment history since his back injury was due to the poor economy in Texas. There is sufficient evidence in the record to support the trial court's finding that Stansbury was not entitled to temporary total disability benefits past August 27, 1992.

## CONCLUSION

Because we find that the judgment rendered by the trial court did not comply with the statutory scheme of § 48-162.01 as amended by L.B. 757, which was in force at the time judgment was rendered, we must reverse and remand that portion of the Workers' Compensation Court's judgment which provided for vocational rehabilitation benefits and determined Stansbury's loss of earning capacity, with directions for further proceedings in keeping with this opinion. However, we find that there is sufficient evidence in the record to support the trial court's determination that Stansbury was not entitled to further benefits after August 27, 1992. We therefore affirm that portion of the judgment which denied Stansbury temporary total disability benefits after August 27, 1992.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.