CARL STANSBURY, APPELLANT, V. HEP, INC., APPELLEE.

539 N.W.2d 28

Filed October 27, 1995.   No. S–94–813.

Gordon Peterson, of Orton, Brown, Thomas & Peterson, for appellant.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. INTRODUCTION

The Nebraska Workers' Compensation Court entered judgment directing the defendant–appellee employer, HEP, Inc., to pay the plaintiff–appellant employee, Carl Stansbury, in addition to the compensation benefits it had already paid him or on his behalf, benefits for a 10–percent loss of earning capacity and for a 12–week period of vocational rehabilitation. Claiming that he was entitled to greater benefits, as more particularly set forth in part IV(2) below, Stansbury appealed to the Nebraska Court of Appeals, which in part affirmed and in part reversed the judgment of the compensation court. *Stansbury v. HEP, Inc.*, 3 Neb. App. 712, 530 N.W.2d 284 (1995). HEP then successfully petitioned this court for further review, asserting the Court of Appeals erred in determining the applicable law and its effect, as more particularly set forth in part IV(1) below. We now reverse the judgment of the Court of Appeals and remand with the direction that it affirm the judgment of the compensation court.

## II. SCOPES OF REVIEW

A reviewing court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2)

the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Shade v. Ayars & Ayars, Inc.*, 247 Neb. 94, 525 N.W.2d 32 (1994); Neb. Rev. Stat. § 48–185 (Reissue 1993). However, on questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts. See *McPherrin v. Conrad, ante* p. 561, 537 N.W.2d 498 (1995).

## III. FACTS

Stansbury began working for HEP on March 25, 1991. The parties stipulated that he sustained a compensable injury to his lower back on May 9, 1991, and stipulated to his earnings. In addition, the parties entered into a partial settlement agreement which was approved by the compensation court. The partial settlement agreement left open for further determination the compensability of medical expenses incurred after August 27, 1992; the existence of temporary disability, whether total or partial, after August 27, 1992; the existence of permanent disability, whether total or partial; and Stansbury's entitlement to vocational rehabilitation. The nature and extent of Stansbury's injury also remain an issue between the parties.

Stansbury, who had a high school education and no other formal training at the time of trial, February 4, 1994, was 28 years old. His work history includes jobs that required heavy lifting, bending, and stooping.

He left HEP on May 19, 1991, and moved to Texas, where he found the job market more difficult than here. In the summer of 1991, he was hired part time by an amusement company. He quit that job in December 1991 because work was available for only a few hours a day. Stansbury thereafter received unemployment benefits while continuing to seek employment. However, he was unable to find reemployment until June 1992, when he was hired by a furniture company. He was laid off from that position in August 1992 and again received unemployment benefits while he searched for another job. He was next hired part time in October 1993 to install water softeners. This job

requires Stansbury to lift up to 75 pounds, and he has not missed any work because of his back problems.

After Stansbury moved to Texas, he started treatment with Dr. Jaime C. Lim, but HEP and its insurance carrier were not happy with him, so the parties agreed to switch to medical treatment by Dr. Craig A. Banta. Stansbury began treatment with Banta on October 28, 1992, and continued with him through March or April 1993. Banta expressed the opinion that Stansbury could not engage in heavy lifting or frequent bending, stooping, or lifting, and indicated that Stansbury had suffered a 5-percent permanent impairment of the whole body. Banta concluded in a questionnaire dated February 18, 1993, that Stansbury had reached maximum medical improvement.

Stansbury underwent a functional capacity assessment in March 1993 and has not seen Banta since. In fact, Stansbury did not see a doctor from March 1993 until the time of trial. The functional capacity assessment recited that Stansbury could lift an average material handling weight of 121 pounds and perform at a moderately heavy work level.

In June 1993, Dean N. Venter of Venter Consulting Service evaluated Stansbury's loss of earning capacity. Venter indicated that if Stansbury were limited to medium work, his loss of earning capacity would be approximately 15 to 20 percent. If he were limited to light-duty work, his loss of earning capacity would be 25 to 30 percent. According to Venter, however, if the functional capacity assessment was an accurate portrayal of Stansbury's present physical capabilities, his loss of earning capacity would be minimal. In December 1993, Venter prepared a vocational rehabilitation plan based on the assumption that Stansbury would be limited to light-duty work, which included 2 years of training at Southeast Community College in electronics.

## IV. ANALYSIS

We first consider HEP's assignments of error and then proceed to a review of the errors Stansbury assigned to the compensation court.

### 1. HEP's Assignments of Error

HEP asserts the Court of Appeals erred in three respects,

namely, in its determination of the applicable statute, its treatment of the evidence, and its failure to find that Stansbury waived any error in the statute applied.

### (a) Applicable Statute

More particularly, HEP contends in its first assignment of error that the Court of Appeals wrongly determined that Neb. Rev. Stat. § 48-162.01 (Reissue 1993) applies to this case.

Section 48-162.01 (Reissue 1988) was amended to operate from and after January 1, 1994, so as to provide, among other things, a means of determining a vocational rehabilitation plan and a means of determining loss of earning power. 1993 Neb. Laws, L.B. 757. Subsection (3) of the new version of the statute provides in relevant part:

If entitlement to vocational rehabilitation services is claimed by the employee, the employee and the employer or his or her insurer shall attempt to agree on the choice of a vocational rehabilitation counselor from the directory of vocational rehabilitation counselors established pursuant to subsection (2) of this section. If they are unable to agree on a vocational rehabilitation counselor, the employee or employer or his or her insurer shall notify the compensation court, and the compensation court shall select a counselor from the directory of vocational rehabilitation counselors established pursuant to subsection (2) of this section. Only one such vocational rehabilitation counselor may provide vocational rehabilitation services at any one time, and any change in the choice of a vocational rehabilitation counselor shall be approved by the compensation court. The vocational rehabilitation counselor so chosen or selected shall evaluate the employee and, if necessary, develop a vocational rehabilitation plan. It shall be a rebuttable presumption that any vocational rehabilitation plan developed by such vocational rehabilitation counselor and approved by a vocational rehabilitation specialist of the compensation court is an appropriate form of vocational rehabilitation. . . . Any loss–of–earning–power evaluation performed by a vocational rehabilitation counselor shall be performed by a

counselor from the directory established pursuant to subsection (2) of this section and chosen or selected according to the procedures described in this subsection. It shall be a rebuttable presumption that any opinion expressed as the result of such a loss–of–earning–power evaluation is correct.

The old version read in relevant part:

If such services are not voluntarily offered and accepted, the Nebraska Workers' Compensation Court or any judge thereof on its or his or her own motion, or upon application of the employee or employer, and after affording the parties an opportunity to be heard by the compensation court or judge thereof, may refer the employee to a qualified physician or facility for evaluation and report of the practicability of, need for, and kind of service, treatment, or training necessary and appropriate to render him or her fit for a remunerative occupation, the costs of such evaluation and report involving physical or medical rehabilitation to be borne by the employer or his or her insurer, except that the costs of such evaluation and report involving vocational rehabilitation shall be paid from the Vocational Rehabilitation Fund. When both physical or medical rehabilitation and vocational rehabilitation are involved, the costs may be apportioned by the compensation court between the employer and the Vocational Rehabilitation Fund. Upon receipt of such report, and after affording the parties an opportunity to be heard, the compensation court or judge thereof may order that the physical or medical services and treatment recommended in the report, or such other physical or medical rehabilitation treatment or service he, she, or they may deem necessary, be provided at the expense of the employer or his or her insurer.

§ 48–162.01(3) (Reissue 1988).

Notwithstanding that the trial was not held until February 4, 1994, more than a month after the new statute became effective, the compensation court applied the old statute. Contrary to the conclusion of the Court of Appeals, HEP claims the compensation court was correct in doing so for two separate

reasons. HEP first argues that as the amendments to the statute were substantive in nature, the new statute could not apply to Stansbury's preamendment injury.

In *Behrens v. American Stores Packing Co.*, 228 Neb. 18, 421 N.W.2d 12 (1988), we adopted the observation made in then Chief Justice Krivosha's concurrence in *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984), that a substantive law is one which creates a right or remedy and that a procedural law provides the method by which a substantive right is exercised. Stated otherwise, a substantive law creates duties, rights, and obligations; a procedural law prescribes the means and methods through and by which substantive laws are enforced and applied. See, *Rios v. Board of Pub. Utilities*, 256 Kan. 184, 883 P.2d 1177 (1994); *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352 (Fla. 1994); *S. Kellogg & Sons v. Lobban*, 204 Tenn. 79, 315 S.W.2d 514 (1958); *Johnson v. Terry*, 48 N.M. 253, 149 P.2d 795 (1944); *Hopkins v. Kurn*, 351 Mo. 41, 171 S.W.2d 625 (1943).

The new statute did not provide a new right; it merely altered the method by which a claimant could receive the already existing right of vocational rehabilitation or compensation for loss of earning power. The fact that the new statute provides for priorities in developing and evaluating a rehabilitation plan does not alter this legal reality. The priorities do not create the right to vocational rehabilitation; they are merely part of the new method for exercising this right.

The second reason HEP urges that the new statute does not apply to this case is that the compensation court promulgated rules evidencing an intention that "transitional" cases be governed by the old statutory framework. HEP cites to Workers' Comp. Ct. R. of Proc. 42E (1995), which provides: "If an employer received notice of injury before January 1, 1994, the employee may continue to receive vocational rehabilitation services from the vocational rehabilitation counselor selected prior to that date." Irrespective of whether this rule evidences an intent on the part of the compensation court to treat transitional cases differently, the legal reality is that while the compensation court is entitled to adopt and promulgate rules necessary for carrying out the intent of the Nebraska Workers'

Compensation Act, see Neb. Rev. Stat. § 48–163 (Reissue 1993), the rules cannot modify, alter, or enlarge provisions of a statute entrusted to its administration, see, *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994); *State ex rel. Spire v. Stodola*, 228 Neb. 107, 421 N.W.2d 436 (1988); *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985). In short, the compensation court does not have the power to determine when statutes will apply and when their application will be stayed.

Where an amendment to a statute makes a procedural change, it is binding upon a tribunal on the effective date of the amendment and is applicable to pending cases that have not been tried. *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 460 N.W.2d 671 (1990); *Behrens v. American Stores Packing Co.*, 228 Neb. 18, 421 N.W.2d 12 (1988); *Oviatt v. Archbishop Bergan Mercy Hospital*, 191 Neb. 224, 214 N.W.2d 490 (1974). See *Allen v. IBP, Inc.*, 219 Neb. 424, 363 N.W.2d 520 (1985). As the amendments to the statute in question were procedural in nature, the new statute was applicable to this case, and Stansbury was thus entitled to vocational rehabilitation. As such, the new statutory procedure for selecting a vocational rehabilitation counselor should have been followed.

Accordingly, there is no merit to HEP's first assignment of error.

### (b) Treatment of Evidence

In its second assignment of error, HEP alleges that the Court of Appeals erred in finding that Venter's opinions were entitled to a rebuttable presumption of correctness.

But the fact is that the Court of Appeals made no such ruling. Moreover, the statute clearly states that the only opinion regarding vocational rehabilitation or loss of earning power entitled to a rebuttable presumption is that of a vocational rehabilitation counselor chosen or selected by the procedures set forth in the statute. § 48–162.01(3) (Reissue 1993). Venter was not chosen or selected by those procedures, so his opinion is not entitled to a rebuttable presumption.

Therefore, neither is there any merit to HEP's second assignment of error.

## (c) Waiver of Error

Finally, in its third assignment of error, HEP urges that the Court of Appeals erred in failing to find that Stansbury waived his right to claim error in the misapplication of the statute.

HEP bases this argument on two different grounds. First, HEP argues that it was error for the Court of Appeals to utilize the doctrine of plain error. Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Dike v. Dike*, 245 Neb. 231, 512 N.W.2d 363 (1994); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). HEP states that in order for the Court of Appeals to reach its result, "it was required both to find that the subject statute was 'procedural' for purposes of determining whether it should be applied and 'substantive' in that it effected [sic] a litigant's substantial right for purposes of applying the doctrine of plain error." Brief in support of petition for further review at 8. According to HEP, these findings are inherently inconsistent.

However, this assertion is incorrect. As determined in part IV(1)(a), the statute in question is procedural. Thus, there is nothing inconsistent in these two precepts.

Second, HEP asserts that Stansbury was not prejudiced by the application of the old statute. Under the new statutory scheme, Stansbury would not have had the ability to select a rehabilitation counselor of his choosing without the agreement of HEP. In addition, the only rehabilitation expert whose opinions were admitted into evidence and considered by the compensation court was Stansbury's own rehabilitation expert. Finally, any rehabilitation plan proposed under the new statute would be subject to the priority scheme set forth therein:

> The following priorities shall be used in developing and evaluating a rehabilitation plan. No higher priority may be utilized unless all lower priorities have been determined by the rehabilitation counselor to be unlikely to result in a job placement for the injured employee that is consistent with

the priorities listed in this section. If a lower priority is clearly inappropriate for the employee, the next higher priority shall be utilized. The priorities are, listed in order from lower to higher priority:

(a) Return to the previous job with the same employer;

(b) Modification of the previous job with the same employer;

(c) A new job with the same employer;

(d) A job with a new employer; or

(e) A period of formal retraining which is designed to lead to employment in another career field.

§ 48-162.01(3) (Reissue 1993).

The plan proposed for Stansbury is for a period of formal retraining and is in the highest priority category. Under the new statute, any plan of formal retraining could be utilized only if all lower priorities were shown to be clearly inappropriate for the employee, and the vocational rehabilitation counselor would be required to show that all lower priorities were unlikely to result in a job placement for Stansbury. Thus, it cannot be said that Stansbury was prejudiced by having the compensation court consider the only plan entered into evidence, proposed by a vocational rehabilitation counselor selected solely by himself, constituting the highest priority category under the new statute.

As for the loss of earning power evaluation, under the new statutory scheme only the evaluation performed by the vocational rehabilitation counselor selected or chosen pursuant to the new statute is entitled to a rebuttable presumption. Whether a vocational rehabilitation counselor so selected would have determined that Stansbury's loss of earning potential was greater than the 10 percent determined by the compensation court is mere speculation. Hypothetically speaking, if Venter's opinion on loss of earning power was given a rebuttable presumption effect, the result need not necessarily be different from that reached by the compensation court. Venter opined that if the functional capacity assessment was an accurate portrayal of Stansbury's physical condition, his loss of earning capacity would be minimal. The trier of fact was free to accept the functional capacity assessment over the opinion of Banta as to Stansbury's physical condition. See *Vredeveld v. Gelco Express*,

222 Neb. 363, 383 N.W.2d 780 (1986). Therefore, even with a rebuttable presumption in favor of Venter's opinion, the trial court could nonetheless have concluded that Stansbury's loss of earning power was minimal.

Stansbury introduced into evidence opinions ranging from minimal to 30 percent. Because on this record it cannot be said that Stansbury was prejudiced by a finding of 10 percent by the compensation court or by the application of the old statute, there is merit in HEP's third assignment of error. Accordingly, the Court of Appeals erred by holding that application of the old statute constituted plain error.

### 2. STANSBURY'S ASSIGNMENTS OF ERROR

Stansbury asserts that the compensation court erred in finding that he was entitled to only a 12–week period of vocational rehabilitation for job placement, finding that he had suffered only a 10–percent loss of earning capacity, and awarding him no benefits after August 27, 1992.

### (a) Rehabilitation Plan

Stansbury first urges that the compensation court erred when it rejected his proposed plan of vocational rehabilitation and instead allowed only a 12–week program of job placement. He seems to argue that because he was entitled to vocational rehabilitation and HEP did not offer any contrary evidence, his plan therefore should have been accepted by the compensation court.

Although HEP did not introduce a plan contrary to the one proposed by Stansbury, this does not mean that the evidence was uncontradicted.

> "A conflict or contradiction regarding an expert's opinion need not result from opinions expressed by different experts. A conflict or contradiction of opinions may arise in the course of testimony given by the same expert witness. A good faith conflict due to self–contradiction of an expert's opinions presents a question to be resolved by the trier of fact."

*Vredeveld v. Gelco Express*, 222 Neb. at 369, 383 N.W.2d at 783. Venter's plan was based on Stansbury being restricted to light–duty work. However, as noted in part III, Venter stated

that if the functional capacity assessment that Stansbury underwent was an accurate portrayal of his present physical capabilities, his loss of earning capacity would be minimal.

The functional capacity assessment concluded that Stansbury could perform at a moderately heavy work level. The compensation court could easily have found that these two opinions of Venter were contradictory. Therefore, the compensation court was not required to accept Venter's rehabilitation plan. See, *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 520, 483 N.W.2d 523, 525 (1992) ("where the testimony of the same expert is conflicting, resolution of the conflict rests with the trier of fact. . . . Moreover, the compensation court is not required to take an expert's opinion as binding and may, as may any other trier of fact, either accept or reject such an opinion"); *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991) (compensation court not bound by testimony of expert, nor is reviewing court to determine the weight and credibility of such evidence).

Stansbury also claims that the compensation court's award is not supported by sufficient evidence. In testing the sufficiency of the evidence to support findings of fact made by the compensation court, the evidence must be considered in the light most favorable to the successful party. See, *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994); *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994). So considered, there is ample evidence to support the award of limited vocational rehabilitation benefits. The award was consistent with the functional capacity assessment, which concluded that Stansbury could perform at a moderately heavy work level, and the opinion of Venter, who indicated that if the assessment was accurate, Stansbury's loss of earning potential would be minimal.

Thus, there is no merit to Stansbury's first assignment of error.

### (b) Earning Capacity

Stansbury's second assignment of error is that the compensation court erred in finding that he had suffered only a 10-percent loss of earning capacity.

Contrary to Stansbury's claim that the evidence is insufficient to support the compensation court's finding in this regard, there is ample evidence which does so. The functional capacity assessment indicated that Stansbury had a good fitness level and was capable of working with an average material handling weight of 121 pounds, or at a moderately heavy work level. Although Banta indicated that Stansbury should not perform manual labor with frequent lifting, bending, or stooping and is employable at a light–duty job, the compensation court, as the trier of fact, was entitled to resolve any conflicts in the evidence in HEP's favor and to accept the functional capacity assessment over Banta's opinion. See *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986).

Accordingly, neither is there any merit to Stansbury's second assignment of error.

(c) Temporary Total Disability

In his third assignment of error, Stansbury contends that the compensation court erred in awarding him no temporary total disability benefits after August 27, 1992. Stansbury argues that he is entitled to temporary total disability benefits from August 28, 1992, through February 18, 1993, the date he reached maximum medical improvement.

However, a claimant is not entitled to temporary total disability benefits merely because the claimant underwent rehabilitation up to the time of maximum medical improvement. Under Neb. Rev. Stat. § 48–121(5) (Reissue 1993), an injured employee is entitled to compensation for such reasonable period of time as is spent undergoing rehabilitation and he or she is therefore unable to work. *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990). There was ample evidence that Stansbury's unemployment during this time was not because of his injury, but, rather, because of the poor economy in the area of Texas in which he was living. Stansbury himself testified that during this period, he was constantly looking for any work he could find, including general labor, maintenance, or janitorial work. The compensation court could therefore properly have found that Stansbury was not entitled to any further temporary total disability payments after August 27, 1992.

Consequently, this assignment of error is as meritless as were the first two.

## V. JUDGMENT

For the foregoing reasons, the judgment of the Court of Appeals is, as first noted in part I, reversed and the cause remanded with the direction that the Court of Appeals affirm the judgment of the compensation court.

REVERSED AND REMANDED WITH DIRECTION.