IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

GILLS V. NEBRASKA MACHINE PRODUCTS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID GILLS, APPELLANT,
V.
NEBRASKA MACHINE PRODUCTS, INC., APPELLEE.

Filed July 9, 2013.    No. A-12-1066.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Jon Rehm, of Rehm, Bennett & Moore, P.C., L.L.O., for appellant.

Todd R. McWha, of Waite, McWha & Heng, for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

INTRODUCTION

David Gills appeals from the order of the Nebraska Workers' Compensation Court, which dismissed his claim for benefits after finding that Gills failed to prove he sustained a work-related injury arising out of and in the course and scope of his employment with Nebraska Machine Products, Inc. (Nebraska Machine). Because the Workers' Compensation Court was not clearly wrong in finding that Gills failed to prove that he suffered a compensable accident and injury and that Gills' medical condition was the natural progression of a preexisting injury, we affirm.

BACKGROUND

Gills began working for Nebraska Machine in early 2011 as a machine operator. His duties consisted of taking metal parts off of a machine, measuring them, and placing the parts in a tub. When the tub became full, Gills would move it to a different location and then work to fill a new tub. The tubs could weigh up to 300 pounds when full. Other workers were available to

- 1 -

help Gills move a tub if it was too heavy for him to move alone. Also, Nebraska Machine provided carts upon which a tub could be placed to move it safely.

Prior to his employment with Nebraska Machine, Gills suffered from a preexisting injury to his right shoulder. In May 2003, Gills began complaining of right shoulder pain. He sought periodic treatment through June 2004 for right shoulder pain and again began complaining of chronic right shoulder pain in 2009. An MRI examination on March 2, 2009, showed that Gills had a torn right rotator cuff. Gills attempted conservative treatment, and when that proved unsuccessful, he decided to have surgery to repair the tear in late 2009. However, Gills did not have insurance to pay for the surgery, and as of the date of trial in this case, he had not yet had surgery to repair his right rotator cuff.

From the time of Gills' diagnosis of a torn right rotator cuff in March 2009 until he began his employment with Nebraska Machine in early 2011, Gills consistently complained of symptoms in his right shoulder, including constant pain described as numbness and weakness in his right upper extremity; pain that increased during cold weather; pain that increased or decreased based on Gills' level of activity; aching, throbbing, and shooting pain; lack of full strength; and difficulty sleeping.

After he was diagnosed with a torn right rotator cuff, Gills used the Nebraska Department of Health and Human Services vocational rehabilitation services to assist him in finding employment, including his employment with Nebraska Machine.

Gills testified that on May 5, 2011, while he was attempting to lift a filled tub at work, he felt immediate, sharp pain in his right shoulder. Gills sought treatment on May 5 from Jessica Rose, an advanced practice registered nurse at a pain clinic. Gills had treated extensively with Rose in 2009 when he was initially diagnosed with a torn right rotator cuff. On May 5, 2011, Gills told Rose that he had pain in his right shoulder and that it began to increase while performing work activity for Nebraska Machine. Rose noted in her medical report that Gills was being seen for chronic right shoulder pain related to a history of right rotator cuff tear and a history of degenerative joint disease. She commented that Gills' pain had increased during the last few months and that activity such as lifting and repetitive motions would cause an increase in his pain. Rose then remarked that Gills was more active in that he had been helping around his parents' home, cutting grass, and doing yardwork. Rose's record of the May 2011 visit does not show any history given by Gills that he experienced pain in his right shoulder or an increase in pain when he attempted to lift or move a tub at work.

Gills testified that he told one of his supervisors at Nebraska Machine that he hurt his right shoulder on May 5, 2011, while lifting a tub that contained finished product. He also testified that he informed other Nebraska Machine employees that his shoulder pain was getting worse. However, these employees all testified that Gills never informed them of any injury occurring in May 2011. There is no report of such an injury in Gills' personnel file. The "First Report of Alleged Occupational Injury or Illness" form received into evidence at trial states that no report was filed, and the first report of an alleged injury was when Nebraska Machine received a summons for this case.

Gills next sought medical treatment on December 13, 2011, when he went to see Rose, complaining of a gradual onset of moderate bilateral shoulder pain, aching, and throbbing. Gills told Rose his symptoms improved when he reduced his activities and when he took his

medication. He also told Rose his pain worsened when he lifted or moved his shoulder. Rose noted that Gills needed to see his family doctor about his left shoulder problems and that his right shoulder problems were chronic. She then released him to return to work.

Gills sought treatment at an emergency room on December 31, 2011. At that time, he complained of moderate right shoulder pain that was aching and throbbing. Mitchell Barrett, an advanced practice registered nurse, noted that Gills needed right rotator cuff surgery but that he had not been able to have the surgery performed. Barrett specifically noted that there was no injury or trauma related to Gills' current problem. Barrett remarked that cool weather had flared Gills' pain, that Gills was suffering from acute or chronic pain, and that Gills needed to see his orthopedic doctor for followup for a right rotator cuff repair. Gills returned to work full time at Nebraska Machine until late January 2012, when his employment was terminated for absenteeism.

Gills saw Dr. Thomas J. Connelly, an orthopedic surgeon, on February 9, 2012. Connelly reported that Gills complained of moderate right shoulder pain described as dull and achy. Shoulder motion, elevation, rotation, and lifting all made Gills' symptoms worse. Connelly commented that conservative treatment had not been successful and that Gills would like to proceed with surgery for his right rotator cuff. A preoperative history and physical was conducted on March 13. In the history, Gills told Connelly that he injured his shoulder 3 years prior when lifting heavy objects at work and that since that time, he had had increasing right shoulder pain, decreased muscle strength, limited range of motion, and occasional numbness. Gills was not able to proceed with right rotator cuff surgery because of "[i]nsurance issues."

On April 20, 2012, Gills again saw Rose with complaints of gradual onset of constant episodes of moderate right shoulder pain, dull and aching, and radiating to his right upper extremity. Gills said shoulder motion and increased activity made his symptoms worse. He told Rose he had increased his activity around the house and that made his pain worse. He saw Rose again on May 18 with similar complaints. Rose noted that Gills had been doing yardwork for his parents. Gills last saw Rose on June 13, again complaining of gradual onset of constant right shoulder pain worsened by exercise, lifting, and direct pressure.

Dr. Sunil Bansal, a doctor of occupational medicine, reviewed some of Gills' medical records, examined Gills, and submitted a report in August 2012. Bansal diagnosed Gills with a right rotator cuff tear and said the injury occurred on December 13, 2011, because of overuse syndrome while working for Nebraska Machine. Bansal recommended surgery to repair the tear.

Gills filed a petition in the compensation court on February 22, 2012, alleging that he sustained a work-related injury to his right shoulder on May 5, 2011, while lifting a tub of parts in the course of his employment with Nebraska Machine. Specifically, he alleged that he sustained a right rotator cuff tear, and he sought disability benefits, the payment of medical expenses, vocational rehabilitation benefits, waiting-time penalties, attorney fees, and interest. In its answer, Nebraska Machine admitted that Gills was employed by Nebraska Machine on May 5, but generally denied the remaining allegations of Gills' petition. Nebraska Machine also alleged that Gills should be denied benefits because he failed to give timely notice of any alleged injury.

Trial was held on September 6, 2012, and the compensation court heard testimony from Gills and various Nebraska Machine employees and received documentary evidence offered by the parties.

The compensation court entered an order of dismissal on October 10, 2012. The court first addressed Gills' claim that he injured his right shoulder while lifting a tub on May 5, 2011. The court reviewed Gills' testimony about the alleged May 5 injury as well as treatment notes from May 5, December 13, and December 31. The court noted that the medical records did not corroborate Gills' testimony in that there was no mention of an injury to Gills while lifting a tub. The court found that Gills had not sustained his burden of proving he injured his right shoulder while lifting a tub on May 5.

The compensation court next considered whether Gills suffered an aggravation of a preexisting condition on or about May 5, 2011, and concluded that he had not sustained his burden of proof on this issue. The court considered evidence concerning Gills' symptoms from the time his rotator cuff tear was first diagnosed in 2009. The court noted that on May 5, Gills complained to Rose that he felt an increase in his right shoulder pain with an increase in activity while working for Nebraska Machine. However, the court also noted Rose's notation that Gills had been more active while doing yardwork and housework for his parents. The court found this remark compelling because Gills had been working for Nebraska Machine since early 2011 and did not report an increase in his right shoulder pain until he was more active while doing work for his parents. The court then noted that Gills returned to full-time work for Nebraska Machine and did not seek treatment again until December 13, when he reported the same pain he experienced at the time he was first diagnosed with a torn rotator cuff, and December 31, when his pain flared due to cool weather. The court reasoned that if the repetitive nature of his work for Nebraska Machine was aggravating his underlying torn rotator cuff, his pain and discomfort would have been constant and consistent while working. The court noted that Gills had reported cool weather and increased work for his parents as triggering events for increased pain as early as 2009 and reported increased pain from similar events after no longer working for Nebraska Machine. The court found that the true nature of Gills' medical condition and his need for right shoulder medical treatment was the natural progression of his worsening torn right rotator cuff. The court found no medical evidence that Gills sustained a new injury while working for Nebraska Machine and found that his employment with Nebraska Machine was not a contributing factor to his need for right shoulder medical treatment.

Finally, the compensation court discussed Bansal's report, which the court disregarded in its entirety. The court determined that Bansal had not been provided a full and accurate medical history of Gills' torn right rotator cuff. The court noted that Bansal's opinion that the tear occurred in December 2011 was contradicted by the overwhelming medical evidence that Gills tore his rotator cuff in early 2009. The court noted the parties' stipulation that the medical issue in this case was whether Gills sustained injuries arising out of and in the course of his employment with Nebraska Machine on May 5, not on December 13 as found by Bansal.

Gills subsequently perfected his appeal to this court.

## ASSIGNMENT OF ERROR

Gills asserts that the compensation court was clearly wrong in determining that his right shoulder injury did not arise out of and in the course and scope of his employment duties on or about May 5, 2011.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, ___ N.W.2d ___ (2013). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Id.*

## ANALYSIS

Gills asserts that the compensation court was clearly wrong in determining that his right shoulder injury did not arise out of and in the course and scope of his employment duties on or about May 5, 2011. The court found that Gills did not meet his burden to prove he injured his right shoulder while lifting a tub on May 5. Under Neb. Rev. Stat. § 48-151(2) (Reissue 2010), an injured worker must satisfy three elements to prove an injury is the result of an accident: (1) The injury must be unexpected or unforeseen, (2) the accident must happen suddenly and violently, and (3) the accident must produce at the time objective symptoms of injury. *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009).

Gills testified that on May 5, 2011, he hurt his right shoulder while lifting a tub and that he informed a supervisor of the accident and injury. However, other evidence in the record does not support Gills' testimony. There is no accident report in Gills' personnel file. The various Nebraska Machine employees who testified at trial all testified that Gills never told them about an injury on May 5. Rose's May 5 note stated that Gills "presents for medical management of chronic right shoulder pain related to a history of right rotator cuff tear, history of degenerative joint disease." As part of the visit, Rose wrote Gills a doctor's note, stating that "Gills is followed by our clinic for management of chronic [right] shoulder pain (rotator cuff tear). He is prescribed opiates on an as needed basis for his pain control." Rose's notes from May 5 do not mention that Gills was injured at work while lifting a tub. Gills' next medical treatment occurred on December 13, when he met with Rose for "pain medication management." Then Gills visited the emergency room on December 31 for moderate right shoulder pain. The medical record from that visit is also devoid of mention of any work-related injury and states that "[c]ool weather has flared pain" and that there was "no new injury or trauma."

In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154

(2013). The single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, even where the issue is not one of live testimonial credibility. *Id*. When considering the evidence in the light most favorable to Nebraska Machine and giving it the benefit of every inference reasonably deducible from the evidence, Gills failed to show by a preponderance of the evidence that he suffered a compensable accident and injury.

The compensation court also found that Gills failed to show that his work at Nebraska Machine aggravated his preexisting right shoulder injury. The determination of causation is, ordinarily, a matter for the trier of fact. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). In a workers' compensation case involving a preexisting disease or condition, it is sufficient to show that the injury resulting from an accident arising out of and in the course of employment and the preexisting disease or condition combined to produce disability, or that the employment injury aggravated, accelerated, or inflamed the preexisting condition. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). The Nebraska Workers' Compensation Act does not include recovery for "injury, disability, or death that is the result of a natural progression of any preexisting condition." § 48-151(4). In a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

The court in this case found that the true nature of Gills' medical condition, and his need for right shoulder medical treatment, was the natural progression of his worsening torn right rotator cuff injury. In reaching this conclusion, the court rejected Bansal's opinion that Gills had chronic wearing of his rotator cuff from his work tasks based on Bansal's incomplete review of Gills' medical records and conclusion that the injury occurred on December 31, 2011. The Workers' Compensation Court is not required to take an expert's opinion as binding and may, as may any other trier of fact, either accept or reject such an opinion. *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995). We find no error in the trial court's rejection of Bansal's opinion.

The medical records and Gills' own testimony support the compensation court's conclusion that Gills' symptoms were a natural progression of his preexisting injury. Gills began reporting right shoulder pain in 2003 and was diagnosed with a torn right rotator cuff in March 2009. From the time of Gills' initial diagnosis of a torn rotator cuff in March 2009 until he began his employment with Nebraska Machine in early 2011, he consistently and regularly sought medical treatment for his right shoulder pain that increased in cold weather or with an increase in activity level. Gills testified at trial that the pain he experienced within the previous 6 months fell within the same range as his pain in 2009. The notes from Gills' medical treatment in May and December 2011 do not mention that his work aggravated his preexisting shoulder condition. Rose's notes from May 5 show that Gills' visit was for treatment of chronic right shoulder pain related to a history of right rotator cuff tear degenerative joint disease. The record from his December 31 emergency room visit was for increased pain due to cool weather and not a new injury or trauma. After his termination of employment by Nebraska Machine, Gills continued to

complain of increased pain due to increased activity such as helping his parents around the house and with yardwork. In his preoperative history and physical of March 13, 2012, Gills stated that "he injured his shoulder over 3 years ago when lifting heavy objects at work and since that time has had increasing right shoulder pain, decreased muscle strength, limited range of motion and occasional numbness." Three years prior to March 2012 was before Gills began work for Nebraska Machine.

In *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 782, 408 N.W.2d at 280, 287, the Nebraska Supreme Court stated:

> "There is . . . a fine line separating aggravations from recurrences. . . .
>
> "In order to find that there has been an aggravation, it must be shown that the second episode contributed independently to the final disability. Also, there must have been a second 'injury' as that term is used in the jurisdiction. . . .
>
> "If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. . . . This group . . . includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion."

Quoting 4 Arthur Larson, The Law of Workmen's Compensation §§ 95.22 and 95.23 (1987).

There is sufficient evidence in the record to support the trial court's conclusion that there was not an intervening event which aggravated Gills' preexisting right shoulder injury. Gills suffered a torn rotator cuff which was diagnosed in 2009, and during his work for Nebraska Machine, he experienced the same pain and limitations as he did at the time of his rotator cuff tear diagnosis. We find no clear error in the court's conclusion that Gills' symptoms are a natural progression of the original injury.

## CONCLUSION

The compensation court did not err in determining that Gills' right shoulder injury did not arise out of and in the course and scope of his employment duties on or about May 5, 2011.

AFFIRMED.